## LEWISTOWN IRON WORKS v. VULCAN PROCESS COMPANY.[1]

January 11, 1918.

No. 20,607.

**Contract — actions for breach — loss of profits.**

1. In an action for breach of contract, profits which would have been realized had the contract been performed, and which had been prevented by its breach, may be recovered where such profits are not open to the objection of uncertainty or of remoteness, or where, from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into.

**Same — evidence admissible to prove damages.**

2. In an action for breach of contract, where the vendor sold to the vendee a certain welding apparatus for use in its machine repairing business, in a certain county, and, as a part of the contract of sale, agreed to protect the vendor for that county on all such machines sold to it, and not to place any others of the same make in the county, proof of the amount of welding work and the profits derived therefrom done by machines of the same make placed in the county by the vendor, or others liable upon such contract, may be shown and taken into consideration by the jury, in estimating the vendee's damages for the breach.

**Same — question for jury.**

3. Whether the defendant assumed liability for a breach of contract was for the jury, under the evidence.

[1]Reported in 165 N. W. 1071.

**Verdict — damages not excessive.**

4. It does not appear that the verdict was given under the influence of passion or prejudice, or that it is excessive, and it was supported by the evidence.

**Charge to jury — refusal of requests.**

5. We find no reversible error in the charge to the jury when considered in its entirety, nor was it error to deny the defendant's requests to charge.

**Rulings on evidence.**

6. There was no error in the rulings of the court as to the admissibility of evidence sufficient to justify a reversal.

Two actions in the district court for Hennepin county, one to recover $5,000 and the other to recover $10,000 for breach of contract. The cases were consolidated and tried together before Jelley, J., and a jury which returned a verdict for $4,600. Defendant's motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*McDowell & Fosseen,* for appellant.

*George S. Grimes* and *Gordon Grimes,* for respondent.

QUINN, J.

Action to recover damages for breach of contract. Plaintiff recovered a verdict. A case was settled. Defendant moved for a new trial, which was denied. Judgment was entered and defendant appealed.

On and prior to April 9, 1913, and for some time thereafter, E. B. Teeple was engaged in business at Minneapolis, under the name of Vulcan Process Company. He had the exclusive sale of a welding plant apparatus manufactured by the Northern Welding Company of the same place. On that day he sold and thereafter delivered one of such plants to plaintiff for use in its business at the city of Lewistown, located in the central part of Fergus county, Montana. As a part of the contract of sale, which was in writing, the vendor agreed to protect plaintiff for that county on all plants sold to it, and not to place any other like make in that county without plaintiff's consent, guaranteeing plaintiff against any infringement of patent, and warranting that the apparatus would do any kind of work to be found in general welding. The plaintiff paid Teeple

$200 in cash and gave its note for $560 in settlement for the plant, the title thereto to remain in the seller until the note was paid in full.

In June of that year L. E. Jordan became interested in the business with Teeple. During the summer of 1913, Teeple, Jordan and one J. W. Smith, who was the treasurer of the Northern Welding Company, undertook to incorporate under the name of the Vulcan Process Company, pursuant to the laws of the state of Minnesota, for the purpose of taking over the business of the old Vulcan Process Company. Articles of incorporation were accordingly prepared, signed and acknowledged by these parties, as of July 1, 1913, but were not recorded until September 11, 1913.

It is contended on behalf of the plaintiff, that the articles were signed at the time they bear date; and that at that time a written agreement was entered into between the old Vulcan Company and the proposed corporation, Teeple acting for the old company and J. W. Smith acting for the proposed corporation, whereby the patents, contracts, good will and all other property and assets of the old company were sold and transferred to the proposed corporation; and that, in consideration therefor, the defendant was to pay all the debts, assume all the obligations and perform all the contracts of the old company, including the contract in question; that accordingly all the property of the old company was turned over to, and the business was thereafter conducted in the name and for the defendant; and that after the filing of the articles, the defendant fully ratified and confirmed the agreement and transfer, and thereby became liable on the contract in question.

While the defendant admits that the articles appear, upon their face, to have been signed and acknowledged on July 1, 1913, yet it contends that they were not in fact signed or acknowledged until some time in September of that year, and that the business and property of the old Vulcan Company were not turned over to it until after the filing of the articles in September. Defendant denies that any contract was ever entered into between Teeple and Smith, as contended by the plaintiff, or that defendant ever ratified or confirmed any such contract, or that it ever assumed any liabilities or debts of the old Vulcan Company. There was a sharp conflict in the testimony as to these matters upon the trial. The same was fully submitted to the jury under proper instruc-

tions, and, by the verdict, determined adversely to the contention of the defendant, which, under the evidence, we deem conclusive. Nothing will be accomplished by a resume of the testimony bearing upon these issues, further than to remark that at the first meeting of the stockholders in September, 1913, the secretary was instructed to issue 255 shares of the capital stock of the corporation to Teeple and 80 shares to Jordan, in payment for the business and property of the old Vulcan Company turned over to it on July 1, 1913. Plaintiff claims that the contract between Teeple and Smith was turned over to defendant with the other papers, and defendant denies this contention. The paper was not produced at the trial.

Defendant had possession of the contract and note for $560 during the fall of 1913, and the amount then owing upon the note was paid to it. In February, 1914, defendant, through a jobber, sold and delivered a welding plant of the same make as plaintiff's to one McHardie, at Buffalo, Fergus county, Montana, for use in that county, without plaintiff's consent. The plaintiff then brought suit for damages against defendant, claiming that the sale was in violation of the terms of the Teeple contract and that the defendant, having assumed the same, was liable for its breach. A trial followed. Plaintiff recovered a verdict which was set aside and a new trial granted. Pending that suit defendant made 7 like sales in Fergus county, and plaintiff brought another action for damages for breach of its contract. The two suits were consolidated and tried as one. Plaintiff recovered a verdict for $4,600 upon which judgment was entered, and defendant appealed.

Defendant alleges some 38 assignments of error upon this appeal, 14 of which relate to rulings upon the admissibility of evidence, and 18 to the instructions of the court bearing upon profits and losses with reference to the measure of damages. We think the evidence, as well as the instructions in reference to the profits and losses, was proper. Nor is there any force in the objection that no proper foundation was laid for the testimony of the witnesses testifying as to the probable life of the apparatus.

Plaintiff is a corporation engaged in repairing machines at Lewistown. Louis W. Spalding is its president and general manager. He has been a machinist for about 27 years. He testified to having had considerable

correspondence with Teeple relative to purchasing a welding apparatus; that he finally came to Minneapolis where he closed the contract in question on April 9, 1913; and that before signing the same he had a long discussion with Mr. Teeple and Mr. Smith at the latter's place of business, with reference to their not placing any other machine of the kind in his county, the exclusive clause in the contract, and the claim that the apparatus was protected by patent. He further testified that the welding proposition was a new thing in his country, and that after installing the plant he sent advertising matter out over Fergus county concerning the same. That he kept an account of the work done by the plant, and that in 1913 it did a gross business of $1,224.05; in 1914, $2,355.05; in 1915, $3,032.79, and during the first nine months of 1916, $2,487.75. That the net profits on such work ran from 50 to 75 per cent, and that it averaged about 70 per cent. That the work consisted largely of repairing engines and automobiles coming from all parts of the county, until defendant placed other plants of the same make therein, when there was a falling off of the business from the distant parts of the county .

It is a well established rule, that damages to be recovered for breach of contract, are those which arise according to the usual course of things from the breach itself, or such as may reasonably be supposed to have been in the contemplation of the parties at the time of entering into the contract, as a probable result of a breach of it. Hopkins v. Sanford, 38 Mich. 611; Billmeyer v. Wagner, 91 Pa. St. 92. Only direct and immediate damages are recoverable under the first part of this rule. Speculative profits or remote losses are not within its meaning. Hamilton v. McPherson, 28 N. Y. 72, 84 Am. Dec. 330. But, under the latter part of the rule, profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into. Howard v. Stillwell Mnfg. Co. 139 U. S. 199, 11 Sup. Ct. 500, 35 L. ed. 147; Emerson v. Pacific Coast & N.

P. Co. 96 Minn. 1, 104 N. W. 573, 1 L.R.A.(N.S.) 445, 113 Am. St. 603, 6 Ann. Cas. 973; Allison v. Chandler, 11 Mich. 542; Chapman v. Kirby, 49 Ill. 211.

The validity of the contract for the breach of which this action was brought is not questioned. Whether defendant assumed liability for a breach of its terms was for the jury. The sale of 8 welding plants of the same make in the county without plaintiff's consent, was contrary to the terms of the contract. If, as the result of such sales made by defendant, welding work from the different parts of the county was diverted from plaintiff to its loss of profits, plaintiff is entitled to damages. Of what could such damages consist but the profits that would have been made on the work lost as the result of the breach? To measure such damages, the jury must have some basis for an estimate, and what more reasonable than to take the profits derived from like work in the locality, during the time plaintiff was placing its machines in that territory in violation of the terms of the contract? It will hardly be contended but that the parties at the time the agreement was made could reasonably be supposed to have contemplated the fact that there would be a falling off of the plaintiff's work, and thereby a loss of profits, as the probable result of the placing of several like plants in the county. The vendor sold the apparatus to the plaintiff for use in its repair work at Lewistown, guaranteed to it the exclusive use of the same in the county as against other plants of its make, agreed not to place any other of its make in the county without plaintiff's consent, guaranteed the plaintiff against any infringement of patent, and warranted the machine to do any kind of work to be found in general welding. The number of sales made by defendant of like machines in the county, their proximity to the plaintiff's place of business, the character of the work and the locality from which it came, the amount thereof and the profits derived therefrom, were properly received in evidence.

When the jury was put in possession of these facts, it was given the best and most natural means of determining the amount of work which the plaintiff lost as the result of the breach and the amount of profits it might have derived therefrom had it not been for the interference of defendant. The work of welding is unlike a merchantable commodity, it can have no labeled price, each job must be measured at the time by

its character and extent, and the profits to be derived therefrom must be arrived at in the same manner. The reasoning in Emerson v. Pacific Coast & N. P. Co., supra, is applicable. Profits were within the contemplation of the parties, and are therefore the proper basis for the award of damages.

Appellant assigns as error that the verdict was given under passion and prejudice, and that it is excessive. There was proof offered upon the trial to the effect: That the average amount of work done by the plant sold to plaintiff was over $220 per month for 41 months, and that the profit thereon was 70 per cent; that the plant sold by defendant to McHardie at Buffalo, 38 miles southwest of Lewistown, in Fergus county, did work to the amount of $100 per month, and the profit thereon was 70 per cent, and that the bulk of this work came from within a radius of 25 miles of Buffalo and some from within a few miles of Lewistown; that the plant sold by defendant to Wiseman at Grassrange, 32 miles east of Lewistown, in Fergus county, did work to the amount of about $50 per month and the profit thereon was 50 per cent; that the plant sold by defendant to Halverson, at Winniford in the northeast part of Fergus county, 48 miles from Lewistown, made a profit on its work of 50 per cent; that the plant sold by defendant to Daigle, at Denton in the northwestern part of Fergus county, 41 miles from Lewistown, did work to the amount of $100 per month, and the profit thereon was 50 per cent; that defendant also sold a plant to Marion Powers at Stanford in Fergus county, 54 miles northwest of Lewistown, and one to Ross & Devlin at Stanford in Fergus county, but no testimony was offered as to the amount of work done by the last two plants referred to.

From this testimony it appears that 3 of the plants placed in the county by defendant's jobbers, were doing considerable more work than plaintiff was doing. It does not appear how much work the other 3 plants sold by defendant were doing. How much of this work would have gone to the plaintiff had defendant refrained from placing these 6 plants in that county was for the jury to determine from all the testimony in the case. However this may be, we do not consider the verdict so large as to justify this court in interfering therewith, nor does it appear that the same was given under prejudice or passion.

We discover no prejudicial error in the charge of the trial court when considered as a whole, nor did the court err in refusing the requests to charge. The evidence is sufficient to sustain the verdict and the judgment appealed from should be affirmed. It is so ordered.