**SHOENBERG FARMS, INC., a Colorado corporation, Plaintiff,**

v.

**DENVER MILK PRODUCERS, INC., a Colorado corporation, John C. Woodis, Paul Ehrlich, A. S. White, Fred Hewitt, and Carl Rutz, Defendants.**

**Civ. A. No. 8409.**

United States District Court
D. Colorado.

July 13, 1964.

Creamer & Creamer, George Louis Creamer, Ronald I. Zall, Denver, Colo., for plaintiff.

Holme, Roberts, More & Owen, Richard L. Schrepferman, Denver, Colo., for defendants.

DOYLE, District Judge.

■ This matter is before the Court on the motion of defendants to dismiss the plaintiff's complaint for failure to state a claim in conspiracy. This is a private anti-trust suit allegedly brought pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15, seeking treble damages, and § 4 of the Sherman Act, 15 U.S.C. § 4, seeking injunctive relief. A private litigant can indeed maintain an action for treble damages under § 4 of the Clayton Act. He can not, however, maintain an action seeking injunctive relief under § 4 of the Sherman Act. State of Minnesota v. Northern Securities Co., 194 U.S. 48, 71, 24 S.Ct. 598, 48 L.Ed. 870 (1904);

Paine Lumber Co. v. Neal, 244 U.S. 459, 471, 37 S.Ct. 718, 61 L.Ed. 1256 (1917); United States v. Bendix Home Appliances, 10 F.R.D. 73, 76 (S.D.N.Y.1949).

■■ The relief which the plaintiff seeks is predicated upon the fact that the conduct of the named defendants is allegedly violative of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and §§ 2(a), (e), and (f) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. §§ 13(a), (e), and (f). That portion of the complaint which alleges that the conduct of the defendants is violative of any provision of § 2 of the Clayton Act as amended by the Robinson-Patman Act fails to state a claim upon which relief can be granted because, as presently drafted, it fails properly to invoke the jurisdiction of this Court by alleging a violation of said § 2. As indicated in detail in Rowe, Price Discrimination Under the Robinson-Patman Act (1962), Chapter 4, there are fairly complex jurisdictional requirements which must be met before the substantive prohibitions of the statute can come into play. In briefest summary these jurisdictional requirements are that a discrimination in price must be alleged to have arisen from (A) consummated contemporaneous sales (B) by the same seller to different purchasers, (C) involve "commodities" of (D) "like grade and quality", and (E) occur "in commerce".

The allegations which remain to be considered are those which allege that the named defendants have engaged in conduct violative of §§ 1 and 2 of the Sherman Act. To determine whether the complaint states a cause of action against each and all of the named defendants it is necessary to examine the character and identity of the respective parties. The corporate plaintiff is a Denver manufacturer, processor, and distributor of milk and milk products. The corporate defendant, Denver Milk Producers, Inc., does not appear to be an entity which has any character or identity incompatible with characterization as a farmers' marketing cooperative

within the meaning of and subject to the provisions of § 1 of the Capper-Volstead Act, 7 U.S.C. § 291, Cf. Sunkist Growers v. Winckler & Smith Citrus Prod. Co., 370 U.S. 19, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962). The individual defendants are officers, directors, or employees of the corporate defendant.

■ The defendants have moved to dismiss all claims and all parts of the plaintiff's complaint referring to a combination or conspiracy among the defendants. The position of the defendants is that the plaintiff's allegations that the defendant corporation and its officers, directors and employees, acting as such, have conspired among themselves to restrain trade in violation of § 1 of the Sherman Act or to monopolize or attempt to monopolize in violation of § 2 of the Sherman Act both fail to state claims upon which relief can be granted. This position is well taken, for the complaint alleges the existence of no conspiracy other than a purported intra-corporate conspiracy.

■ In the case of the § 1 allegations this conclusion is strengthened by the fact that § 1 does *not* make it a substantive offense to "restrain trade." Obviously a single business entity, for its own purposes, can restrain its own trade. The conduct prohibited by § 1 is only the conduct of two or more separate business entities in conspiring, contracting or combining in restraint of trade. It is the conspiracy which creates the offense. That which is lawful for a single business entity to do, a plurality of business entities may not combine or conspire to do.

■ Such is the law with respect to ordinary commercial corporations. So far as the constituent producer-members of a Capper-Volstead cooperative are concerned, however, it appears probable, in the present state of the law, that the cooperative may lawfully acquire and exert significant market power—possibly even power conferred by monopoly status—so long as that power is acquired only by means of voluntary affiliation of producers with the cooperative. It is the cooperative, not its constituent members, which is the relevant entity.

As Judge Wyzanski put it in a jury charge in Cape Cod Food Products v. National Cranberry Association, 119 F. Supp. 900 (D.Mass.1954):

"To monopolize means to take steps toward acquiring a dominant position in the market, and to take such steps when you are not encouraged by the law. There is nothing unlawful under the Sherman Act or any other anti-trust act in trying to get even 100 per cent of the market through skill, efficiency, superiority of product, or like entirely laudable steps. It is not unlawful under the anti-trust acts for a Capper-Volstead cooperative, such as the National Cranberry Association admittedly is, to try to acquire even 100 per cent of the market if it does it exclusively through marketing agreements approved under the Capper-Volstead Act, 7 U.S.C.A. §§ 291, 292.

"Now, under this Act, it is permissible for a cooperative to purchase through one hand, that is, through the cooperative, and to sell through one hand, and to fix the prices at which it purchased uniformly, and to sell at uniform prices or uniformly changing rates of price.

"Other companies not under the Capper-Volstead Act would perhaps violate the anti-trust laws if they combined people to fix the prices at which goods were bought and goods were sold, but a cooperative which is formed under the Capper-Volstead Act is specifically authorized by law to use this unified form of purchasing and unified form of selling.

"Hence, it is not a violation of the Sherman Act or any other anti-trust act for a Capper-Volstead cooperative to acquire a large, even a 100 per cent, position in a market if it

does it solely through those steps which involve cooperative purchasing and cooperative selling.

"On the other hand, it would be a violation of the law, and it would be a prohibited monopolization for a person or group of persons to seek to secure a dominant share of the market through a restraint of trade which was prohibited, or through a predatory practice, or through the bad faith use of otherwise legitimate devices." (119 F.Supp. at 907)

In the case of the § 2 allegations made in the complaint the provisions of § 2 must be dealt with separately. Section 2 embodies, first of all, a substantive prohibition, a prohibition which can be violated by a single business entity or any person acting on behalf of a business entity, viz.: "Every person who shall monopolize, or attempt to monopolize * * * any part of trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor." Section 2 also embodies, however, a conspiracy provision, a provision which, like § 1, prohibits not the act which constitutes the substantive offense, but rather, the act of combining or conspiring.

It has been suggested that it follows, in the case of § 2 alone, that the individual officers, directors and employees of a single corporation could conceptually conspire one with another and with their own corporation to monopolize or attempt to monopolize. Report of the Attorney General's National Committee to Study the Antitrust Laws (1955), p. 30.

■ Such judicial decisions as have focused on the problem, however, have not accepted that suggestion, nor do we. They reason, rather, as was suggested in Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 in the context of an alleged § 1 conspiracy, that:

"* * * It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. Here it is alleged that the conspiracy existed between the defendant corporation, its president, Calvin, its sales manager, Kelly, and its officers, employees, representatives and agents who have been actively engaged in the management, direction and control of the affairs and business of defendant. This is certainly a unique group of conspirators. * * * Obviously, they were acting only for the defendant corporation. It is true that the acts of the corporate officers may bring a single corporation within Section 2 of the Sherman Act, which covers an attempt to monopolize, but this is not because there exists in such circumstances, a conspiracy to which the corporation is a party * * * the conspiracy upon which plaintiff relies consists simply in the absurd assertion that the defendant, through its officers and agents, conspired with itself to restrain its trade in its own products. Surely discussions among those engaged in the management, direction and control of a corporation concerning the price at which the corporation will sell its goods, the quantity it will produce, the type of customers or market to be served, or the quality of goods to be produced do not result in the corporation being engaged in a conspiracy in unlawful restraint of trade under the Sherman Act. * * * The Act does not purport to cover a conspiracy which consists merely in the fact that the officers of the single defendant corporation did their day to day jobs in formulating and carrying out its managerial policy." (200 F.2d at 914)

■ The distinction appropriately to be drawn is this: A corporate officer, acting as such, can individually perform

predatory acts for which he is personally responsible which may be offenses in that they are cognizable as acts which are attempts to monopolize. The corporation, the principal, is, of course, also responsible for the acts of its agents which are violative of the substantive provisions of § 2, but the agents, the corporate officers, can be individually responsible also. The import of the decision of the Supreme Court in Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951) is indeed that a corporate officer may be individually held responsible for a predatory act of attempted monopolization; but nothing in that opinion suggests that a corporate officer can be regarded as a conspirator with his fellow officers and his own corporation in violation of the conspiracy provision of § 2 when he merely acts in his capacity as an officer to establish the policy and advance the interests of the corporation —and this is so even when the policy of the corporation is to monopolize. In Lorain Journal the corporate officers were liable under § 2 because of their individual acts of attempted predatory monopolization—the substantive offense —not because they were or could be regarded as having violated the conspiracy provision of § 2. Cf. Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., 146 F.Supp. 300 (S.D.N.Y.1956).

The Motorola case, it is true, actually involved only an allegation that a conspiracy violative of § 1 existed, rather than a conspiracy violative of § 2. In other cases, however, it has been recognized that the same reasoning compels the conclusion that an intra-corporate conspiracy violative of the conspiracy provision of § 2 cannot in reason be said to exist. In Marion County Co-Op Association v. Carnation Co., 114 F.Supp. 58, 63 (W.D.Ark.1953), it was held, for example:

> " * * * [A] violation of Section 1 and the conspiracy portion of Section 2 of the Sherman Anti-Trust·Act cannot be committed by a corporation and its officers and agents when said officers and agents are acting for the corporation in the ordinary scope of their duties.

> "In the instant case plaintiff makes no intimation that the officers and agents were acting in other than their normal capacities, and therefore the complaint does not state a claim under Section 1 or the conspiracy portion of Section 2 of the Sherman Anti-Trust Act.

> "Thus it is evident that if plaintiff has stated a claim upon which relief can be granted, it necessarily must be a claim bottomed upon that portion of Section 2 of the Act which provides as follows:

>> " 'Every person who shall monopolize, or attempt to monopolize * * * any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *.' " (114 F.Supp. at 63)

The same conclusion is warranted in the case at bar. The only claim stated in the complaint upon which relief could be granted in the present posture of the case is the claim which alleges that the corporate defendant and the individual defendants have monopolized or attempted to monopolize a part of trade or commerce among the several States in violation of the substantive portion of § 2 of the Sherman Act.

Inasmuch as the defective allegations of the complaint are intermingled with the substantive § 2 allegations in the complaint it might be expedient for plaintiff to file an amended complaint.

It is therefore ordered that the complaint be dismissed, with leave to file an amended complaint within 20 days. In the event of failure to file an amended complaint within 20 days the following portions of the complaint will be deemed stricken for failure to state claims upon which relief may be granted:

1. Paragraphs 12, 14, 15, 16, 17, 19, 21, 22;

2. From Paragraph 20 the words: "and has conspired with the other defendants to monopolize in the said Denver Milk Producers, Inc.,";

3. From Paragraph 28 the words: ", and in pursuance of the conspiracy above set forth"; and

4. From Paragraph 29 the words: "have conspired to prevent the shipment or sale of milk by those persons or any of them to the plaintiff,".