POSTAL INSTANT PRESS, a
California corporation,
Plaintiff,

v.

Jim JACKSON, et al., Defendants.

No. 85–K–2648.

United States District Court,
D. Colorado.

April 21, 1987.

Sheldon E. Friedman, Cortez & Friedman, Englewood, Colo., for plaintiff.

Randall W.B. Purvis, Bromley, Renfrow & Torbet, Colorado Springs, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a diversity action for various tort and contract damages resulting from the breach of a franchise agreement. Plaintiff Postal Instant Press (PIP), a California corporation, grants franchises to operate stores under the registered trademarks, service marks, and trade names of "PIP" and "Postal Instant Press." In February 1976, PIP issued a franchise to Gerald F. and Beatrice Pitstick for PIP Store No. 317. In March 1977, defendant Jim Jackson purchased the Pitstick's business and assumed the obligations of the franchise. Jackson agreed to pay PIP a monthly franchise fee based on gross sales realized each month from the operation of the store. In June 1977, Jackson assigned his interest to defendant Postal Instant Press of Colorado Springs, Inc. of which Jackson is president. Three months later in August 1977, Jackson and Postal Instant Press of Colorado Springs, Inc. obtained a franchise from PIP for PIP store no. 393. Jackson agreed to pay PIP an initial franchise fee along with a continuing royalty based on gross sales realized each month from the operation of the store. Jackson also agreed to pay PIP a monthly fee of one percent of gross sales realized each month toward an advertising fund. Defendant Postal Instant Press of Colorado Springs, Inc. has been operating stores 317 and 393 from its commencement to the present.

PIP filed this action against Jackson, J.R. Jackson, Inc., and Postal Instant Press of Colorado Springs, Inc. alleging Modern Design, Inc. is a trade name under which defendant J.R. Jackson, Inc. is doing business and that all defendants have diverted business from and failed to pay royalties to PIP. Defendants Jackson and Postal Instant Press of Colorado Springs, Inc. have counterclaimed against PIP requesting declaratory judgment and an accounting and alleging PIP 1) fraudulently induced de-

fendants into entering the agreements; 2) breached the agreements; and 3) violated various antitrust laws.

This action is before me on PIP's motion for summary judgment on defendants' counterclaims. The motion alleges 1) defendant Jackson has no standing to sue on claims arising from the 317 franchise 2) the statute of limitations bars defendants' breach of contract and fraud claims; 3) defendants are not entitled to declaratory judgment; 4) defendants have not sufficiently plead tortious interference with contract; 5) defendants' demand for an accounting is not plead with sufficiency; and 6) defendants have not properly asserted jurisdiction over the antitrust claims.[1]

Summary judgment is appropriate only where there are no genuine issues of material fact. *Zimmerman v. Board of Public. of Christian Reformed Church*, 598 F.Supp. 1002, 1007 (D.Colo.1984). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to ascertain the need for trial. *Commercial Iron & Metal Co. v. Bache & Co.*, 478 F.2d 39 (10th Cir.1973). I will consider each of the allegations in plaintiff's motion for summary judgment.

### I.  Standing to Sue

PIP alleges defendant Jackson does not have standing to sue on claims arising from the 317 franchise because Jackson has assigned all interest in it to Postal Instant Press of Colorado Springs, Inc. Both parties agree that contract and tort rights are assignable. *Matson v. White*, 122 Colo. 79, 220 P.2d 864 (1950); *Micheletti v. Moidel*, 94 Colo. 587, 32 P.2d 266 (1934); *Scott v. Fox Bros. Enterprises, Inc.*, 667 P.2d 773 (Colo.App.1983). Once an assignment is made, all interests and rights of the assignor are transferred to the assignee. *Pierce v. Ackerman*, 488 P.2d 1118 (Colo.App.1971). However, if the assignment is invalid or incomplete, the assignor may maintain a suit in his own name. *Harambee Enterprises, Inc. v. State Bd. of Agriculture*, 511 P.2d 503

(Colo.App.1973). The assignment here may not have been valid. As PIP points out in its brief supporting the motion for summary judgment, section XXVII of the franchise agreement expressly provides no assignment may be made without PIP's prior written consent. Jackson alleges a valid assignment was made, but PIP indicates in its own brief to support the motion for summary judgment that the validity of the assignment is in question. Because the validity of the assignment rests on factual determinations yet to be made, summary judgment on these grounds is not appropriate.

### II.  Statute of Limitations

#### A.  Breach of Contract

PIP also alleges the statute of limitations, Colo.Rev.Stat. § 13–80–110 (1973), bars defendants' claim that PIP has breached sections V, X, XI, and XX of both franchise agreements. Under section 13–80–110, actions of debt founded upon any contract shall be commenced within six years after the cause of action accrues. A cause of action accrues at the time of the alleged breach. *Goeddel v. Aircraft Finance, Inc.*, 152 Colo. 419, 382 P.2d 812 (1963). PIP asserts sections V, X, XI, and XX of the agreements impose no duty on PIP and any breach of the sections must have occurred in 1977 or 1978. All of these sections can be construed to impose some duty on PIP. I agree any claim under section V, which provides for payment of the initial franchise fee, must have accrued in 1977 when the franchise agreement was executed. Thus, any claim for breach of this section cannot be sustained. The other sections, however, are not related to the commencement of the franchise agreement. These sections could have been breached at any time after 1977 or 1978. As defendants point out, the exact times of any alleged breach have not yet been determined. Summary judgment shall be entered in favor of the plaintiffs on defendants' claims for breach of section V of the agreement.

**1.** Default judgment was entered against defendants U.S. Color, Inc. and Jim Jackson, Sr. on

February 28, 1987.

As to claims for breach of sections X, XI, and XX, summary judgment is denied.

## B. Fraudulent Misrepresentation

■ PIP argues defendants' fourth claim for fraudulent misrepresentation is barred by the statute of limitations, Colo. Rev.Stat. § 13–80–109 (1973). That statute holds actions based on fraud must be filed within three years after the discovery of facts constituting the fraud. The statute of limitations begins to run when the aggrieved party discovers, or should have discovered by due diligence, the facts constituting fraud. *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036 (10th Cir.1980). Defendants allege PIP fraudulently misrepresented the benefits of the franchise agreement before defendants' entering the agreements. Defendants do not state at what time they actually discovered the misrepresentation. PIP argues that because the alleged misrepresentation occurred before the two agreements in 1977, the claim is barred. I see no reason to assume defendants actually *discovered* the misrepresentation prior to entering the agreements. In fact, one can assume that because the defendants entered the agreements, they did not know of the misrepresentation at that time. Because the time at which the alleged misrepresentation was discovered has yet to be determined, the motion for summary judgment on this claim must be denied.

## III. Declaratory Judgment

■ Defendants' second claim seeks a judgment declaring the rights of the parties under the franchise agreements. If an actual controversy exists between the parties and the circumstances indicate that declaratory relief may be an appropriate method for the settlement of the conflict, then a counterclaim for a declaratory judgment will be permitted. Wright & Miller: Federal Practice and Procedure § 1406 (1971). However, as PIP argues, when the request for declaratory relief brings into question issues that have already been presented in plaintiff's complaint and defendant's answer to the original claim, the plaintiff may challenge the request on the ground that a decision on the merits will render the request for a declaratory judgment moot. *Id.; Larson v. General Motors Corp.*, 134 F.2d 450 (2d Cir.), *cert. denied*, 319 U.S. 762, 63 S.Ct. 1318, 87 L.Ed. 1713 (1943). Plaintiff's complaint alleges breach of both agreements, bad faith dealing, interference with contractual obligations, deceit, conspiracy, and breach of a covenant not to compete. A determination of these issues will necessarily determine defendants' rights under the franchise agreement. Thus, the request for declaratory relief is redundant. Plaintiff's motion for summary judgment on defendants' request for declaratory judgment is granted.

## IV. Tortious Interference With Contract Or Prospective Business Advantage

■ Defendants claim that PIP's actions constitute tortious interference with business relations. Defendants, however, do not state with any particularity the actions which constitute interference. Assuming defendants are alleging tortious interference with contract, they must set forth the elements of intentionally inducing a breach of contract:

(1) existence of a valid contract between plaintiff and a third party;

(2) knowledge by the defendant of this contract, or knowledge of facts which should lead him to inquire as to the existence of the contract;

(3) intent by the defendant to induce a breach of contract by the third party;

(4) action by the defendant which induces a breach of contract; and

(5) damage to the plaintiff.

*Rodriguez v. Bar-S Food Co.*, 539 F.Supp. 710, 718 (D.Colo.1982); *Comtrol, Inc. v. Mountain States Telephone and Telegraph Co.*, 32 Colo.App. 384, 513 P.2d 1082, 1084 (1973). Defendants have failed to allege the existence of a contract between defendants and a third party.

Assuming defendants are alleging interference with a prospective business advantage, it is sufficient to show intentional and improper interference preventing formation

of a contract rather than proof of an underlying contract, *Dolton v. Capitol Federal Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App.1981); *Williams v. Burns*, 540 F.Supp. 1243, 1251–52 (D.Colo.1982). Defendants have not shown the prevention of the *formation* of any contract. Defendants' claim for tortious interference with business relations cannot be sustained.

V. Demand for an Accounting

■ Defendants' demand for an accounting must be denied. "The moving party is not entitled to an accounting as of course." *Hartman v. Elias*, 41 N.M. 392, 69 P.2d 929 (1937). Under Colorado law, a demand for an accounting and a refusal to comply with the demand must be pleaded and proved. *American Woodmen's Life Ins. Co. v. Supreme Camp*, 37 Colo.App. 311, 549 P.2d 423, 425 (1976). Although defendants may be entitled to an accounting if they cannot determine how much money is due to them from PIP, defendants have failed to allege they have made such a demand and PIP refused to comply. Defendants' claim for an accounting is dismissed without prejudice. Defendants may amend their claim within 30 days from the date of this order if they can do so within the bounds of F.R.C.P. 11, to set forth facts, if such facts exist, proving they have made a demand for an accounting.

VI. The Antitrust Claims

■ Defendants allege three separate antitrust claims based on violations of 15 U.S.C. §§ 1 and 2 (1985). Defendants assert jurisdiction under 15 U.S.C. § 4 (1985). As plaintiffs point out, private parties cannot seek injunctive relief under section 4. *Shoenberg Farms, Inc. v. Denver Milk Producers, Inc.*, 231 F.Supp. 266, 267 (D.Colo.1964). Assuming jurisdiction is proper, defendants have not sufficiently plead the elements of an antitrust claim under sections 1 and 2. As plaintiffs argue, in order to state a cause of action under 15 U.S.C. § 1, the following elements are required:

1. Joint action, in the form of a contract, combination or conspiracy, by two or more distinct and independent entities or persons;

2. Resulting in unreasonable restraint of interstate trade or commerce; and

3. Actual damage caused by the unreasonable, anti-competitive restraint of trade.

*Zimmerman*, 598 F.Supp. at 1009 (D.Colo.1984); *Middlebrooks v. City of Eustis*, 563 F.Supp. 1060 (M.D.Fla.1983). In order to state a claim under 15 U.S.C. § 2, the following elements are required:

1. A specific intent to monopolize;

2. Predatory or anti-competitive conduct in an effort to further the specific intent;

3. A dangerous probability of success; and

4. The attempt must occur within a defined relevant market. *Middlebrooks*, 563 F.Supp. at 1061.

Defendants allege the provisions of the franchise agreements forbidding the defendants to enter into other franchise agreements for "While-U-Wait" printing operations constitute a horizontal restraint of trade. Defendants do not allege any joint action by two or more distinct and separate entities.[2] Defendants also allege the non-competition covenants in the agreements constitute an unreasonable restraint of trade. Again, defendants fail to allege any joint action. Covenants not to compete are generally not violative of the antitrust laws. *McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1378 (8th Cir.1983), *cert. denied*, 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984). Finally, defendants allege plaintiff's filing this action constitutes an attempt to monopolize. Defendants have not defined the relevant market nor alleged any intent to monopolize. Because none of the antitrust claims are sufficiently plead, defendants' request for injunctive relief under 15 U.S.C. § 26 cannot be sus-

**2.** Defendants' standing to assert claims under 15 U.S.C. §§ 1 and 2 is in question because defendants were parties to the franchise agreements. Defendants are actually asserting that the contract provisions may have been void because they allegedly constituted violations of the antitrust laws. Thus, defendants' interposition of free-standing antitrust claims is improper.

tained. A party seeking injunctive relief must establish a reasonable probability of success on the merits. *Macleod v. Miller,* 44 Colo.App. 313, 612 P.2d 1158 (1980). Defendants cannot demonstrate this probability. Summary judgment shall be granted in favor of the plaintiff on defendants' sixth through eighth claims.

### VII. Exemplary Damages

Defendants' remaining claims are founded in contract and tort. Defendants cite Colo.Rev.Stat. § 13–21–102 (1973) in a bid to obtain exemplary damages as result of plaintiff's willful and wanton actions.

Traditionally, exemplary damages have not been permitted in a contract action. *Williams v. Speedster, Inc.,* 175 Colo. 73, 485 P.2d 728 (1971). More recently, the Colorado Court of Appeals has held that where "the facts alleged and proved establish willful and wanton conduct and reckless disregard for the rights" of the claimant, "exemplary damages may be awarded though the action sounds in contract." *Davies v. Bradley,* 676 P.2d 1242, 1246 (Colo.App.1983). In *Davies,* the purchasers of a home brought suit against the builder-vendors for breach of the implied warranty of habitability. The trial court awarded plaintiffs "the actual costs of making the house habitable and bringing it into compliance with the county's building code." *Id.* at 1244. The trial court also permitted the recovery of exemplary damages "in an amount equal to the legal fees incurred by the plaintiffs because of the Bradley's willful and wanton failure to disclose" the construction defects in the home. *Id.*

The complete rationale employed by the *Davies* court in reaching its conclusion on the recovery of punitive damages is as follows:

> Exemplary damages are not ordinarily a proper remedy in breach of contract cases. *Williams v. Speedster, Inc.,* 175 Colo. 73, 485 P.2d 728 (1971); *Sams v. Curfman,* 111 Colo. 124, 137 P.2d 1017 (1943). This is because the allegations in an action for breach of contract do not ordinarily bring the case within the confines of the statute. *See* § 13–21–102, C.R.S.1973. Where, however, as here,

the facts alleged and proved establish willful and wanton conduct and reckless disregard for the rights of the plaintiff, the maleficent intent on which exemplary damage awards in tort are based is present, and exemplary damages may be awarded though the action sounds in contract. The punitive and deterrent purposes of the statute authorizing exemplary damages in civil cases are thereby effected.

*Id.* at 1246.

*Davies* has been followed by several subsequent decisions of the Colorado Court of Appeals. The first such case was *Collister v. Ashland Oil Co., Inc.,* 687 P.2d 525 (Colo.App.1984). Ashland was Collister's oil and gas lessee. Collister brought suit in the Nebraska state courts seeking a lien on the royalty payments Ashland owed. As a result of that suit, Ashland was placed under court order to pay funds into the court registry. Ashland, however, was consistently dilatory in complying with this order. Consequently, Collister filed suit in Denver district court. That court awarded Collister $500 in interest occasioned by Ashland's delay. The trial court "also ordered that $1500 be paid to Collister as exemplary or punitive damages to punish Ashland for its deliberate withholding of payments due and owing to her." *Id.* at 527. The appellate court affirmed the award of the $1500:

> Based on the evidence, we conclude that the trial court properly found Ashland's *deliberate and willful failure to comply with the Nebraska court orders was not merely a breach of contract, but rather* constituted a wrongful act in reckless disregard of Collister's rights and feelings; that is, it was *a tortious act* of the type that will support an award of exemplary damages. *See Davies v. Bradley,* 676 P.2d 1242 (Colo.App.1983) (emphasis added).

> \*    \*    \*    \*    \*    \*

The trial court, in essence, concluded that Ashland's continued disobeyance of the Nebraska court orders which forced Collister to seek further judicial relief was intentional and done in reckless dis-

regard of her rights and feelings, and that Ashland should be punished to prevent further such acts from occurring. *Id.* at 528.

*Podleski v. Mortage Finance, Inc.,* 709 P.2d 18 (Colo.App.1985), *cert. granted,* Nov. 4, 1985, also followed *Davies.* Podleski brought suit for breach of a mortgage loan commitment. The complaint sought either money damages for breach of contract or specific performance. The complaint also sought compensatory and punitive damages for fraud and outrageous conduct. *Id.* at 18–19.

Podleski withdrew the outrageous conduct claim at the commencement of the trial. Following presentation of Podleski's case, the trial court dismissed the fraud claim. At the conclusion of the entire trial, the court dismissed the claim for specific performance and entered judgment on the breach of contract claim "in the amount of $14,280 compensatory and $30,000 exemplary damages." *Id.* at 19.

The sole issue presented on appeal was "whether the court erred as a matter of law in awarding exemplary damages in a breach of contract action." *Id.* at 18. The appellate court concluded the trial court had not erred. Quoting the same portion of *Davies* set forth above, and also citing *Collister,* the court of appeals first held that "where appropriate, exemplary damages may be recovered in a breach of contract claim." *Id.* at 19. The trial court had found that plaintiff had met the requirements of § 13–21–102, and the appellate court apparently had no quarrel with this finding. *Id.* The appellate court then concluded punitive damages were properly awarded even though plaintiff had not specifically pleaded them in the breach of contract claim because "plaintiff clearly identified this as an issue at the outset of trial." *Id.*

*Davies* has also been cited in *Denver Publishing Co. v. Kirk,* 729 P.2d 1004 (Colo.App.1986). Kirk was sued by the publishing company for failure to settle an accounting upon the termination of his independent newspaper distributorship. Kirk filed several counterclaims to that ac-

tion. On appeal, one of the issues raised concerned the damages Kirk had recovered on his claim of breach of contract. The court of appeals recognized that under supreme court precedent,

mental anguish which results solely from pecuniary loss following breach of contract is not recoverable because pecuniary loss as result of breach of contract invariably causes some form and degree of mental distress. However, damages for mental anguish alone are recoverable for willful or wanton breach when they are a natural proximate consequence of the breach.

*Id.* at 1008.

The *Kirk* court held the trial court had erroneously instructed the jury on this issue, and the case was accordingly remanded for a new trial on the damage part of Kirk's claim for willful or wanton breach of contract. *Id.* at 1009. The court also agreed "with Kirk that on retrial of the issue of damages suffered as a consequence of the willful or wanton breach of contract, the trial court should, if the evidence warrants, instruct the jury to consider an award of exemplary damages." *Id.* at 1009, citing *Podleski.*

Finally, the *Davies* rule was invoked in *Cox v. Bertsch,* 730 P.2d 889 (Colo.App. 1986). In that case, plaintiffs were awarded specific performance of a real estate sales contract and also exemplary damages. In affirming the award of exemplary damages despite the absence of an award of actual damages, the *Cox* court cited *Podleski* and *Collister* for the proposition "that exemplary damages are available in breach of contract actions if the facts as alleged and proved establish willful and wrongful conduct and reckless disregard of a party's rights and feelings." *Id.* at 892–93.

The Colorado Supreme Court has yet to rule on whether exemplary damages are recoverable in a breach of contract action pursuant to Colo. Rev Stat. § 13–21–102. *Podleski* is apparently still pending before the supreme court on *certiorari.* Since the propriety of punitive damages in a contract action was the sole issue faced in that case,

*Podleski* will necessarily decide the question. At the present time, however, the highest court of this state is still silent on this point.

As a federal court sitting in diversity on this issue, I am obligated to apply "state law as announced by the highest court of the State." *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the absence "of an authoritative pronouncement from the state's highest court," a federal court should regard itself "as sitting in diversity and predicting how the state's highest court would rule." *Diatom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984). In this respect, the federal court effectively sits as a state court. *Bosch*, 387 U.S. at 465, 87 S.Ct. at 1782.

■■■ In attempting to fill the shoes of the Colorado Supreme Court, I "must follow any intermediate state court decision unless other authority convinces [me] that the state supreme court would decide otherwise." *Diatom*, at 1574; *see Bosch*, 387 U.S. at 465, 87 S.Ct. at 1782. I have not hesitated to follow "the well-reasoned opinions of the [Colorado] Court of Appeals" where "I am aware of no factors which suggest" the state's supreme court would not do the same. *Hiatt v. Schreiber*, 599 F.Supp. 1142, 1145 n. 1 (D.Colo.1984). Nevertheless, since I effectively sit here as an independent court, I am not bound to adhere to decisions rendered by the state court of appeals. Instead, my analysis on how the state supreme court would rule is properly supplemented by consideration of "the policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts." *Diatom*, at 1574–75.

■■■ My examination of the *Diatom* factors as applied to the issue of recovery of exemplary damages in a contract persuades me that the Colorado Supreme Court would not affirm the *Davies* line of cases generated in the state's intermediate court. Rather, I adhere to the view, expressed in *Hiatt*, at 1147 n. 3, that punitive damages may not be awarded as damages to a claim for breach of contract. This conclusion is influenced by consideration of several lines of thought.

I first have recourse to the statute itself. Colo.Rev.Stat. § 13–21–102(1)(a) states:

> In all civil actions in which damages are assessed by a jury *for a wrong done to the person or to personal or real property*, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party (emphasis added).

The *Davies* line of cases is astonishingly devoid of any analysis of the statute. This development is unfortunate because "[e]xemplary damages are available in Colorado only pursuant to statute." *Kaitz v. District Court*, 650 P.2d 553, 556 (Colo. 1982). Exemplary damages cannot be awarded unless the statutory prerequisites have been satisfied.[3] *See Ark Valley Alfalfa Mills, Inc. v. Day*, 128 Colo. 436, 263 P.2d 815, 817 (1953).

With regard to the use of § 13–21–102 to award punitive damages in an action for breach of contract, the operative statutory language is the phrase "wrong done to a person." This phrase has been embedded in the statue at least since 1894. *Williams*

---

3. As a matter of *obiter dictum*, I therefore take issue with the decision in *Cox v. Bertsch*. By granting punitive damages in the absence of an award of actual damages, the *Cox* court appeared to transgress the express language of § 13–21–102 that punitive damages be awarded "in addition to the actual damages sustained." *See Palmer v. A.H. Robins Co., Inc.*, 684 P.2d

187, 213–14 (Colo.1984) (by its own terms, the punitive damages statute has no application in the absence of a successful underlying claim for actual damages). The Cox decision also flies in the face of explicit supreme court precedent disallowing punitive damages "in actions in equity." *Kaitz*, at 556.

*v. Williams,* 20 Colo. 51, 37 P. 614, 619–20 (1894). Since that time, the Colorado Supreme Court has consistently held the "wrong" meant by the statute does not "contemplate" breach of contract. *Westesen v. Olathe State Bank,* 75 Colo. 340, 225 P. 837, 838, 839 (1924). *Accord Williams v. Speedster, Inc.,* 175 Colo. 73, 485 P.2d 728, 730 (1971); *Sams v. Curfman,* 111 Colo. 124, 137 P.2d 1017, 1018 (1943); *Thuringer v. Bonner,* 74 Colo. 539, 222 P. 1118, 1119 (1924). As my discussion of the *Davies* line of cases reveals, the court of appeals has not provided any indication why this established and well founded line of supreme court cases should be abandoned so abruptly. It is axiomatic that the court of appeals is bound to follow the precedent set by the supreme court unless and until the supreme court chooses to modify or abandon that precedent. *Home Ins. Co. of N.Y. v. Taylor,* 94 Colo. 446, 32 P.2d 183, 185 (1934).

In construing the same statutory language, Judge Doyle flatly held "[t]he words 'wrong done to the person, or to personal or real property' were unquestionably intended to apply to any type of *tort.*" *Kohl v. Graham,* 202 F.Supp. 895, 896 (D.Colo.1962) (holding that punitive damages are available in tort claim for loss of consortium) (emphasis added). As a matter of statutory construction, therefore, § 13–21–102 simply does not authorize recovery of punitive damages for actions which do not sound in tort. The court of appeals has not addressed this issue at all, even though at least one court has impliedly faced it. The *Cox* court, for example, supported its affirmance of an award of punitive damages in an action for specific performance by recognizing that since "the merger of law and equity, the modern trend is to allow exemplary damages in addition to equitable relief where injury is caused by a *tort.*" *Id.* at 893 (emphasis added; citation omitted).

Use of § 13–21–102 in contract actions has been spurred by a blurring of the traditionally separate areas of tort and contract.

The case of *Gilmore v. Ute City Mortgage Co.,* —— F.Supp. —— Civ. Action No. 85–K–882, recently adjudicated in this court, provides a good example of this phenomenon. *Gilmore* was a suit for breach of a loan commitment. The amended complaint stated five claims for relief: breach of contract, promissory estoppel, breach of implied warranty of good faith and fair dealing, negligence, and negligent misrepresentation. The first claim clearly stated a contract claim; the last clearly articulated a tort claim. In between, however, lay a doctrinal morass.

The promissory estoppel claim was inappropriate because that doctrine only applies in the absence of a contract, whether written or oral, express or implied. Since the *Gilmore* parties had indisputably formed a contract, the promissory estoppel claim was dismissed. Memorandum Opinion and Order of October 30, 1986, slip op. at 3. The warranty claim was also dismissed because, under the facts of the case, it was merely redundant of the breach of contract claim. *Id.,* slip op. at 3–4; Order on Motion for Reconsideration of December 5, 1986, slip op. at 2–3. Finally, the negligence claim was also dismissed because Colorado law does not recognize an independent tort action for breach of contract. Order of October 30, 1986, slip op. at 4, citing *Strey v. Hunt International Resources Corp.,* 749 F.2d 1437, 1441 (10th Cir.1984), *cert. denied,* —— U.S. ——, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986); *Bloomfield Financial Corp. v. National Home Life Assurance Co.,* 734 F.2d 1408, 1414–15 (10th Cir.1984).

The three claims which were dismissed exemplify the problems which follow when sound principles of historic authenticity are left to moulder in neglect. At common law, a rigid separation of tort and contract was maintained through assiduous application of writs. Thankfully, the drastic and often unjust substantive results wreaked by the procrustean exercise of this procedure have been eliminated by modern rules of pleading.[4] This development, however, does not justify wholesale abandonment of

---

4. The extent to which the liberality of modern rules of pleading has led us into a different but

even more unjust Serbonian bog is not appropriately addressed in this opinion.

the lessons learned by common law. "Those who cannot remember history are condemned to repeat it." George Santayana, Vol. I, *The Life of Reason.* This aphorism holds special meaning for the practice of law, which depends so heavily on the machinery of precedent.

The value of keeping this distinction in our law as well as in mind is not entirely an intellectual nicety. Important social values are at stake. The law of contract is the means by which individual interests are vindicated. It is based upon the principle that the parties to the agreement make their decisions in furtherance of their own objectives. By bargaining, both the benefits and the detriments obtained from the agreement are allocated. While there are indeed certain public aspects of any private transaction which provide a justification for state or governmental intrusion, the essence of contract remains private. Thus, where there is a promissory failure or default in performance, the paramount interest in privacy provides that the parties may provide their own remedies. Much of the law of contract is an effort to provide express remedies where the parties have failed to address problems or contingencies implicit in their agreement. For the rest, the authority of government to intrude is limited to its overriding obligation to protect the interests of others when matters of public policy are affected. The salient principle remains, however, that the choice of remedies is left primarily to the private bargaining process.

Tort is obviously not a product of the bargaining process. The vindication of individual interests is not the object of its purpose. On the contrary, tort is a matter of public law to which all individuals are subject irrespective of choice. A duty is imposed on all individuals to restrain the exercise of freedom so as to avoid damage to others. In these circumstances, the provision for remedies is never left to the participants in the tortious event, but is prescribed by the state as an exercise of its police power. Hence, the elemental danger in confusing these two historic doctrines is that individual freedom may be significantly curtailed without justification.

By retaining historic integrity, society benefits from certain considerations. For example, the law remains imbued with the degree of predictability necessary to any community which functions ostensibly on the basis of the rule of law. On a more mundane level, maintenance of the independent viability of contract and tort permits expeditious resolution of cases. As a result of the confusion engendered by the five counts of the amended complaint in the *Gilmore* case, discovery took longer, and cost more than was necessary, for resolution of the controversy. I addressed this point in my recent opinion in *Zukowski v. Howard, Needles, Tammen, and Bergendoff, Inc.*, 657 F.Supp. 926 (D.Colo.1987):

> There is no virtue in pleading a profusion of claims for relief when the law provides a well-established and straightforward remedy. Indeed, the practice is inimical to the interests of plaintiff for at least two reasons. First, it delays prosecution of the case and increases costs because of the time spent in addressing motions such as those filed in this case. Second, it creates an expanded possibility for reversible error in the event the pleader is persistent or the trial judge is diffident.

*Id.*, at 929, slip op. at 4.

For these reasons, I hold punitive damages are not recoverable under a claim for breach of contract. Accordingly, the motion for summary judgment on defendants' request for punitive damages on its first claim is granted.

■ Whether defendants may recover punitive damages on their tort counterclaims poses a jury question and is not properly disposed of on a motion for summary judgment. *Zukowski,* at 930, slip op. at 6. Plaintiff's motion for summary judgment is therefore denied on defendants' claim of fraudulent misrepresentation.

It is hereby ordered that:

1. Plaintiff's motion for summary judgment is denied on the issue of standing of defendant Jim Jackson, Jr. to sue.

2. Plaintiff's motion for summary judgment is denied on defendants' first claim for breach of sections X, XI, and XX of the franchise agreements, but granted on defendants' first claim for breach of section V of the franchise agreements.

3. Plaintiff's motion for summary judgment is denied on defendants' fourth claim for fraudulent misrepresentation.

4. Plaintiff's motion for summary judgment is granted on defendants' second claim for declaratory judgment.

5. Plaintiff's motion for summary judgment is granted on defendants' third claim for tortious interference with contract or tortious interference with prospective business advantage.

6. Defendants' request for an accounting is dismissed without prejudice. Defendants may amend within 30 days from the date of this order in accordance with F.R.C.P. 11 to state facts proving that a demand for an accounting was made.

7. Plaintiff's motion for summary judgment is granted on defendants' sixth through eighth claims.

8. Plaintiff's motion for summary judgment is granted on defendants' claim for exemplary damages on the defendants' first claim for relief and denied on the defendants' fourth claim for relief.