500 P.2d 989 (1972)
Lillian S. POERTNER, Plaintiff-Appellee,
v.
Robert M. RAZOR, Defendant-Appellant.
No. 70-417.
Colorado Court of Appeals, Div. II.
June 30, 1972.
Rehearing Denied July 25, 1972.
Certiorari Denied September 25, 1972.
*991 William L. Rice, Denver, for plaintiff-appellee.
Akolt, Shepherd, Dick & Rovira, Luis D. Rovira, Denver, for defendant-appellant.
Not Selected for Official Publication.
PIERCE, Judge.
Plaintiff (Mrs. Poertner) and her son (Allan) each owned 50% of a lithographing company in Denver, which was operated by Allan. In 1962, the company was having serious financial difficulties. Allan asked defendant (Razor), a business management consultant, to assist in selling the business and in resolving certain personal and financial problems. Razor agreed to do so, and negotiations were entered into regarding his assumption of the management of their financial affairs.
In October 1963, two agreements were signed by Razor, Mrs. Poertner, Allan and his wife. These agreements provided that Razor would liquidate all the Poertners' assets, including the lithographing business. Razor was to receive a 10% commission on the assets as they were converted into cash. He then proceeded to sell certain personal property and the funds received therefor, less his commission, were deposited in several separate savings accounts on the Poertners' behalf.
In December 1963, Allan and his wife decided they would move to Mexico. They resigned as directors and officers of the company and Allan transferred his one-half interest in the company to his mother. At that time, Mrs. Poertner and Allan executed general powers of attorney to Razor.
On December 17, 1963, additional documents were executed by Razor and Mrs. Poertner: Razor was given a five-year option to purchase one-half of the company's outstanding stock for $36,000; he was given a second option to purchase the remaining half within a ten-year period for the sum of $30,000 (which he exercised immediately by executing his promissory note payable to Mrs. Poertner in the amount of $30,000); and he was given an option to purchase certain real estate called the Inca property. On that same day, Mrs. Poertner also opened a checking account in the names of Robert M. Razor and Lillian S. Poertner, and deposited $17,634.07 of her own funds.
Razor took over operation of the company and was elected president.
On January 29, 1964, Mrs. Poertner agreed to loan the company $5,000, and to make additional loans when "absolutely needed."
On February 29, 1964, a trust agreement was executed by Mrs. Poertner, appointing herself and Razor as co-trustee for her benefit. The trust res was composed of certain promissory notes, the building occupied by the company, Mrs. Poertner's home in Golden, and other personal property owned by Mrs. Poertner.
During the time Razor operated the company, Mrs. Poertner paid, from her own funds, $24,000 on a note of the company; forgave company indebtedness for past rent due her of $9,000; and received no further rent from the company for its occupancy of her building. Also, Razor advanced $40,500 of Mrs. Poertner's funds to the company in reliance on his power of attorney.
Razor continued to operate the company until its liquidation in 1966. From the proceeds *992 of an auction of the company's remaining equipment, Mrs. Poertner received $39,000 as repayment of her loans, plus $3,272.96 interest.
Following liquidation of the company, Mrs. Poertner discovered that numerous withdrawals had been made from her accounts by Razor which she had not authorized and which she did not believe were proper. For that reason, in February 1967, she revoked the trust and Razor's general powers of attorney, and demanded return of her property and an accounting. An accounting was never furnished by Razor and attempts to settle the matter proved futile. Razor refused to transfer certain assets remaining in the trust, and on August 2, 1967, he withdrew $10,400 from the joint savings account.
Mrs. Poertner commenced this action in September 1967, asking for: (1) an accounting by Razor; (2) payment of the promissory note for purchase of the stock; (3) reconveyance of certain real property to her; (4) recovery of fees wrongfully charged and collected by Razor; (5) monies converted by him to his own use; (6) reasonable rental value of real property; (7) monies wrongfully withdrawn and expended from her bank accounts; and (8) exemplary damages.
Razor filed a general denial and counterclaimed for specific performance of the option allowing him to purchase the Inca property or, in the alternative, for damages, and for other relief not at issue on appeal.
Trial was to the court. Judgment was initially granted in favor of Mrs. Poertner on the $30,000 promissory note, plus interest; $7,206.24, plus interest, for fees received by Razor in excess of those authorized by contracts; $1,500, plus interest, for unauthorized loans made by Razor to the company from Mrs. Poertner's funds (later amended to $18,500, plus interest); and $5,000 exemplary damages. The court granted Razor the right to exercise his option to purchase the real estate involved in his counterclaim and granted him an extension of time to exercise that option. Both parties have appealed from this judgment.

THE $30,000 NOTE
Razor first claims that the trial court erred in finding him liable for payment of the $30,000 promissory note. It is his contention that the transaction, which included his execution of this note in exchange for 50% interest in the corporation, was entirely a sham, intended by all parties to conceal true ownership of the stock from Allan's first wife.
Testimony regarding this transaction is contradictory. However, evidence is undisputed that (1) corporate minutes and tax returns stated that Razor was owner of the stock, and (2) he testified in another action, involving Allan's first wife, that he was owner of the stock. This evidence, together with other corroborative but disputed testimony, is sufficient to justify the trial court's conclusion that the note was a valid obligation. We will not disturb this factual determination by the trial court. State of Colorado v. Webb, 104 Colo. 446, 92 P.2d 328.

REIMBURSEMENT FOR UNAUTHORIZED LOANS
Razor next contends that he should not have been held liable for the $40,500 loaned to the company from Mrs. Poertner's funds. Resolution of this issue depends upon an interpretation of actual authority granted him by Mrs. Poertner's power of attorney. His principal argument is that when Mrs. Poertner agreed to loan the corporation $5,000, and "additional amounts later as absolutely needed from time to time for the coming year," she also authorized subsequent additional loans. Since there is testimony that she made no specific authorization for more than the $5,000, that she was not informed as to any additional need for loans after that time, *993 and that she gave no specific authorization for other loans to be made to the company by Razor from her funds, this again was a factual determination within the province of the trial court. State of Colorado v. Webb, supra.
Razor maintains that, even if the court were correct in finding that he had no authority to make the loans, it erred in granting damages of $18,500 on this claim. Razor's contention that Mrs. Poertner was reimbursed $39,000, from liquidation of the corporation assets, is not disputed. However, Mrs. Poertner asserts that it would be unfair to allow Razor to satisfy his personal debts from these corporate funds. She contends that only the half representing Razor's share in the corporation, which was realized on liquidation of the corporate assets, should be used to satisfy Razor's debt. These conflicting contentions raise a problem of first impression in Colorado.
In its amended findings and judgment, the trial court adopted Mrs. Poertner's theory, reasoning that:
"With reference to paragraph 4 of plaintiff's prayer, the Court finds that the evidence was clear that $40,500 was advanced to Poertner Lithographing Co. on behalf of plaintiff by defendant, and that there was no authority for these loans from the plaintiff to the corporation, except for the sum of $5,000, and that defendant should reimburse plaintiff for said $35,500 in unauthorized loans. The Court further finds that when the assets of the Company were sold upon liquidation the plaintiff and defendant each owned one-half of the corporation stock, and each would be entitled to one-half of the net proceeds from the sale of the assets after payment of the corporation debts except the unauthorized loans of $35,500. Defendant repaid plaintiff $39,000 from the proceeds from the sale of the assets and $5,000 thereof should be applied to repayment of the $5,000 authorized loan. That of the remaining $34,000 repaid one-half thereof belonged to each of the parties, and defendant should receive credit for only $17,000 repayment on said $35,500 and therefore he still owes plaintiff $18,500, plus interest thereon from October 17, 1966 to November 20, 1969 in the amount of $3,430.32."
We do not agree with this conclusion.
The difficulty is essentially that of determining who is the debtor of these unauthorized loans. If Razor, as agent, is personally liable for the loan, then Mrs. Poertner's claim that he should not be allowed to use corporate assets to satisfy his personal debt has merit.
The circumstances of this case, however, make such a result erroneous. The conclusion is inescapable that Razor's intent was to benefit the corporation. All his acts, although unauthorized in part, were in furtherance of his primary objective: managing the Poertner family affairs. Indeed, all money taken from bank accounts by Razor was used for corporate business. The corporation should, therefore, be treated as the real debtor. As such, on liquidation, creditor claims would have to be satisfied first. C.R.S.1963, 31-8-5(2) and C.R.S.1963, 31-5-10. Mrs. Poertner, as shareholder, would have to await satisfaction of her claim as creditor before sharing in the proceeds of dissolution. To reimburse her for substantially the total amount of the loan, plus interest, and allow her a share equivalent to what she would get upon corporate liquidation if there had been no loan to repay, would be inequitable.
The question then becomes whether Razor should be liable for the difference between the money repaid to Mrs. Poertner by the debtor corporation and the money borrowed, in this instance $1,500. A principal may sue his agent for wrongful disposition of the principal's property. Restatement (Second) of Agency § 402. In the instant case, Mrs. Poertner properly plead and proved a claim for relief for return of monies had and received. The *994 trial court's original finding, paragraph 3, must therefore be reinstated. It reads:
"With reference to paragraph 4 of plaintiff's prayer, the court finds that the evidence was clear that $40,500 was advanced to Poertner Lithographing Company on behalf of plaintiff by defendant, and that there was no authority for these loans from the plaintiff to the corporation except for the sum of $5,000. The court further finds that plaintiff was repaid $39,000 and that she should be reimbursed for an additional $1,500, together with interest from October 17, 1966 to November 20, 1969, in the amount of $278.25."
This result makes her whole for the improper loans.

EXEMPLARY DAMAGES
Razor further complains that he should not be required to pay exemplary damages. We agree.
Mrs. Poertner, in her amended complaint, sought recovery on several theories. Recovery was sought of money which Razor had received as fees for services and money loaned without authority. Both these claims were for money had and received and, as such, were equitable in nature. It is well established in this state that an award of punitive damages incidental to equitable relief is improper. Miller v. Kaiser, 164 Colo. 206, 433 P.2d 772; Littlejohn v. Grand International Brotherhood of Locomotive Engineers, 92 Colo. 275, 20 P.2d 311. Actions which are essentially for money had and received and in which the judgment does not constitute an assessment of damages are covered by this rule. Aaberg v. H. A. Harman Co., 144 Colo. 579, 358 P.2d 601.
Mrs. Poertner also sought recovery for payment of the aforementioned promissory note. Since an action for the amount due on this promissory note would be an action in contract, exemplary damages may not be awarded incidental to it. Sams v. Curfman, 111 Colo. 124, 137 P.2d 1017.
In our discussion of the cross-claim, infra, we affirm the trial court's refusal to award Mrs. Poertner's claims for the reasonable rental value of the trust property and for reconveyance of certain real estate. We also affirm its factual finding that no fraud was involved on Razor's part. The only remaining claims upon which exemplary damages might be based are thereby eliminated.

CROSS-APPEAL

I.
On cross-appeal, Mrs. Poertner maintains that the trial court erred in awarding Razor $17,039.71 as fees earned under the original contracts. It is her theory that the contracts were express trusts, or at least implied trusts; that he had breached his fiduciary duties; and that he was not entitled to compensation therefor.
A close examination of the contractual documents reveals no intent of the parties that they be considered trusts. They require only that Razor aid in liquidation of the assets and provide that he receive a percentage of the proceeds as compensation for his services.
Although evidence as to the value of services he performed was hotly disputed, the court found neither fraud nor breach of contract in the manner in which the services were rendered. Razor was entitled to some fee and, under the evidence, the amount determined by the trial court was in accordance with the agreement of the parties.

II.
Mrs. Poertner also alleges that she should have been awarded reasonable rents for the Inca property during the period it was managed by Razor. Testimony reveals, however, that she served as cotrustee with him and there is no showing that she was incompetent. Where, as here, she apparently agreed to excuse the past rent and could, as an active trustee, demand *995 future rents, it would not be proper to allow her to benefit, in spite of her own inaction, where under all the circumstances before us, she is equally responsible with him for failure to require that rentals be paid on the property. See G. Bogert, Trusts and Trustees § 591 (2d ed.). Where there is more than one trustee, unless one is in a passive position as to the asset involved, legally incompetent, or unless otherwise provided by terms of the trust, it is the duty of each to participate in the administration of the trust. One trustee should not be allowed to sit idly by while the co-trustee acts upon a matter and then take advantage of that action at a later time. See 2 A. Scott, Trusts § 184 (2d ed.) and Mulcahy v. Johnson, 80 Colo. 499, 252 P. 816.

III.
Finally, Mrs. Poertner argues that the Inca property should be returned to her because the trust agreement nullified the option agreement. We disagree.
The option agreement was a valid and existing legal obligation prior to creation of the trust. Thus, part of the corpus of the trust was subject to divestment by exercise of the option. However, Mrs. Poertner could not destroy Razor's rights by transferring her interest into the trust. See Burke v. Burke, 259 Ill. 262, 102 N.E. 293. Evidence indicated that both parties recognized the existence of these rights in Razor while the trust was in effect, and it was proper for the trial court to grant Razor 30 days within which to deposit the full purchase price with the court where the evidence supports its conclusion that the delay was occasioned by laches as to both parties.
Judgment of the trial court is affirmed, except that portion regarding exemplary damages which is reversed and that portion regarding unauthorized loans which is modified by reinstating paragraph 3 of the trial court's original judgment.
COYTE and SMITH, JJ., concur.