The DENVER PUBLISHING COMPANY, a Colorado corporation, Plaintiff-Appellant and Cross-Appellee,

v.

DeWayne C. KIRK, Defendant-Appellee and Cross-Appellant.

No. 84CA0046.

Colorado Court of Appeals, Div. III.

June 26, 1986.

Rehearing Denied July 31, 1986.

Certiorari Denied Dec. 2, 1986.

Baker & Hostetler, Bruce D. Pringle, Marc D. Flink, Denver, for plaintiff-appellant and cross-appellee.

Pryor, Carney & Johnson, P.C., W. Randolph Barnhart, Rodney R. Patula, Elaine Ashe Wohlner, Arlene V. Dykstra, Englewood, for defendant-appellee and cross-appellant.

BABCOCK, Judge.

In this action on open account by plaintiff, The Denver Publishing Company (the News), the trial court directed a verdict in favor of defendant, DeWayne C. Kirk (Kirk), on plaintiff's claim and directed a verdict in favor of the News on Kirk's counterclaim for outrageous conduct. It submitted Kirk's counterclaim for willful and wanton breach of contract to the jury, and entered judgment for Kirk in accordance with the jury verdict in his favor. Both parties appeal. We affirm in part, reverse in part, and remand for new trial on the issue of Kirk's damages.

I.

From 1963 until November 30, 1979, Kirk owned and operated as a sole proprietor an independent newspaper distributorship. Kirk purchased newspapers from the News and resold them to newspaper carriers, stores, and through racks in a certain geographic district.

From 1963 until October 1979, the relationship between Kirk and the News was defined by written agreements. The latest agreement was executed in February 1970. It defined Kirk's territory and provided that it could be terminated by either party on 30 days written notice.

A good working relationship existed between Kirk and the News until 1978. At that time, Kirk alleges that, in order to increase circulation, the News implemented a program to replace independent distributors with salaried district managers. He asserts that in furtherance of this program the News began to "split districts" and intentionally made conditions intolerable for him by delivering his papers late, by oversupplying papers, and by submitting inaccurate monthly billings to him, which the News refused reasonably to adjust.

In October 1979, Kirk decided to terminate his relationship with the News. Between October 1979 and November 26, 1979, Kirk collected money from his district and withheld payment from the news for part of his September and all of his October billings so as to achieve leverage in his final accounting with the News.

On November 30, 1979, Kirk terminated his relationship with the News. According to the News, on that date Kirk owed the News on account approximately $9,800. This amount was reduced by $2,799.76, which Kirk delivered to a News employee on December 1, 1979. The News thereafter collected $2,328.88 from Kirk's territory which was credited to his account.

Kirk and the News were unable to settle on a final accounting, and in February 1980, the News, by letter, demanded payment of the outstanding balance of the account alleged due. There being no response to the demand, the News filed a claim against Kirk with National Bonding & Accident Insurance Co. (National Bonding), which had bonded Kirk's performance, for the amount claimed due on the account. In September 1980, payment was made by National Bonding to the News on this claim.

In March 1981, the Agency of Credit Control, as assignee of National Bonding, filed suit against Kirk in Adams County to collect monies allegedly due on the bond claim. When Kirk informed the Agency that he had not signed a bond agreement with National Bonding, the Agency dismissed its suit with prejudice, and the News then commenced this action in June 1981.

## II.

A motion for directed verdict can be granted only when the evidence, viewed in the light most favorable to the party against whom the motion is directed, compels the conclusion that reasonable persons could not disagree that the party resisting the motion is not entitled to judgment. *Tri-Aspen Construction Co. v. Johnson,* 714 P.2d 484 (Colo.1986). If there is no evidence upon which a jury could justifiably base a verdict for the party opposing the motion, the trial court should take the case from the jury and enter judgment for the moving party. *Tri-Aspen Construction Co. v. Johnson, supra.* A mere scintilla of evidence is inadequate to require the submission of an issue to the jury. *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508 (Colo.1986).

### A.

■ The News asserts that the trial court erred in granting Kirk's motion for directed verdict on its claim for monies due on open account. The trial court ruled that the evidence was insufficient to submit this claim to the jury. We find no error.

Here, National Bonding paid the News on the bond claim against Kirk. Consequently, the News was made whole as to its outstanding account with Kirk.

The News argues, however, that it repaid National Bonding all monies received on the Kirk claim. Contrary to the News' contention, the record shows that the News did not repay the bond claim. Rather, according to documentary evidence, the News paid to National Bonding a "retrospective premium" in December 1980 in compliance with a complex premium agreement between the News and National Bonding. Thus, the News failed to meet its burden of proof as to the element of damage, and the trial court was correct in directing a verdict against it on this claim.

### B.

■ Kirk contends that the trial court erred in directing a verdict against him on his counterclaim for outrageous conduct. We disagree.

"Although the question whether conduct is sufficiently outrageous is ordinarily a question for the jury, the court must determine in the first instance whether reasonable persons could differ on the outrageousness issue." *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292 (Colo. App.1982). We conclude from the evidence here that no reasonable person could conclude that the News' conduct in its relationship with Kirk was "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970); *see Churchey v. Adolph Coors Co.,* 725 P.2d 38 (Colo.App.1986).

At most, the evidence established that the News was merely implementing its business judgment to convert independent distributorships to salaried manager districts in a permissible manner. *See* Restatement (Second) of Torts § 46 comment g (1965); *cf. Zalnis v. Thoroughbred Datsun Car Co., supra.* Had the News wanted to terminate Kirk and replace him with a district manager, it could have done so upon 30 days' notice. The problems which Kirk experienced with the News' billings and its delivery of papers to him may be indicative of bad business practice but they do not rise to the level of being "extreme and outrageous." Moreover, when Kirk quit, the News replaced him with another independent distributor. Thus, we find no error in the trial court's disposition of plaintiff's claim for outrageous conduct.

## C.

The jury awarded Kirk $910.26 on his claim for breach of contract. The News contends that once the trial court directed the verdict against it on its claim on open account, the trial court should have instructed the jury not to consider Kirk's claims for set-offs or credits in determining damages for breach of contract. We disagree.

Kirk sought actual damages, including lost profits, damages for emotional distress, and exemplary damages. The evidence of credits and set-offs is identical to that in support of amounts which Kirk claimed due him from the News on his breach of contract claim. Although the trial court properly directed a verdict against the News on its claim against Kirk, this evidence is independently probative of his actual damages, exclusive of lost profits. Thus, there was no error.

## III.

## A.

The News contends that, in an action premised on breach of contract, damages for mental suffering may not be recovered unless the alleged breach is accompanied by outrageous conduct. Hence, the News argues that because the trial court directed a verdict in its favor on Kirk's claim for outrageous conduct, it erred in submitting to the jury his claim for damages for emotional distress. We disagree.

*Trimble v. City & County of Denver,* 697 P.2d 716 (Colo.1985) is dispositive of this contention. There, the Supreme Court recognized that damages for mental suffering are recoverable for willful or wanton breach of contract when they are a natural and proximate consequence of the breach. The Supreme Court rejected the contention that damages for mental suffering may not be recovered where the breach is not accompanied by outrageous conduct. Moreover, we cannot say that when the evidence is viewed in the light most favorable to Kirk, the trial court erred in refusing to direct a verdict for the News on this claim.

*See Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984).

## B.

In submitting Kirk's claim for emotional distress to the jury as a consequence of the willful and wanton breach of contract by the News, the trial court instructed the jury that:

"If you also find that the plaintiff's breach of the contract was willful and wanton, then you shall award damages in favor of the defendant in an amount which will reasonably compensate him for mental suffering, if any, *unless you find that the defendant would have incurred the same mental suffering had plaintiff lawfully terminated the contract, in which case you shall award no damages for mental or emotional distress.*" (emphasis added)

The jury, by special verdict, determined that the News willfully and wantonly breached its contract with Kirk, but awarded no damages for mental suffering. Kirk argues that the trial court erred in including the emphasized language in the above instruction. We agree.

In *Adams v. Frontier Airlines Federal Credit Union,* 691 P.2d 352 (Colo.App. 1984), we recognized that mental anguish which results solely from pecuniary loss following breach of contract is not recoverable because pecuniary loss as a result of breach of contract invariably causes some form and degree of mental distress. However, damages for mental anguish alone are recoverable for willful or wanton breach when they are a natural and proximate consequence of the breach. *Trimble v. City & County of Denver, supra; Adams v. Frontier Airlines Federal Credit Union, supra.*

Neither *Adams* nor *Trimble v. City & County of Denver, supra,* require that recovery be predicated on whether a plaintiff would have suffered the same emotional distress if a defendant had acted in a lawful manner. Here, such a requirement injects an irrelevant and speculative deter-

mination by the jury as to what emotional reaction Kirk might have had if his distributorship had been terminated lawfully by the News.

■ Moreover, this language erroneously placed upon Kirk the additional burden of proving that, had the acts been done lawfully, he would have suffered no distress or less distress. There is no requirement that a plaintiff prove how he. would have reacted to a situation which did not occur. Rather, we conclude that the erroneous language of the instruction probably distracted the jury from the only determination which by law it was required to make, *i.e.,* whether the News breached its contract with Kirk in a willful or wanton manner, and if so, did Kirk suffer emotional distress and damages as a result. *See Trimble v. City & County of Denver, supra; Adams v. Frontier Airlines Federal Credit Union, supra.* Because the instruction probably led the jury into error, *see Webb v. Dessert Seed Co.,* 718 P.2d 1057 (Colo.1986), retrial is necessary on the damage part of this claim.

### C.

■ We agree with Kirk that on retrial of the issue of damages suffered as a consequence of the willful or wanton breach of contract, the trial court should, if the evidence warrants, instruct the jury to consider an award of exemplary damages. *See Podleski v. Mortgage Finance, Inc.,* 709 P.2d 18 (Colo.App.1985).

### D.

Kirk finally contends that the termination provision of his agreement with the News does not limit damages for loss of net profits. We disagree.

■ Damages for loss of net profits may be recovered in a breach of contract action unless speculative, remote, imaginary, or impossible of ascertainment. *Lee v. Durango Music,* 144 Colo. 270, 355 P.2d 1083 (1960). However, an aggrieved party to a terminable at will contract may recover only the net profits which would have

been received had the other party to the contract given proper and timely notice of his intention to terminate. *See Chevrolet Motor Co. v. McCullough Motor Co.,* 6 F.2d 212 (9th Cir.1925); *Ag-Chem Equipment Co., Inc. v. Hahn, Inc.,* 350 F.Supp. 1044 (1972), *aff'd in part, vacated in part,* 480 F.2d 482 (8th Cir.1973). Because the distributorship could be terminated by either party on 30 days notice, damages for loss of net profits beyond that time are uncertain, and accordingly, they are not subject to recovery in this case. *See* Restatement (Second) of Contracts § 352 comment b (1979).

The judgment of the trial court against the News on its claim for monies due on open account is affirmed. The judgment of the trial court in favor of the News on Kirk's claim for outrageous conduct is affirmed. The judgment of liability of the News to Kirk for willful or wanton breach of contract is affirmed, but the cause is remanded for retrial of the issues of actual damages, damages for emotional distress, and exemplary damages.

KELLY and TURSI, JJ., concur.