**MORTGAGE FINANCE, INC., a Colorado Corporation, Petitioner,**

v.

**Wojciech K. PODLESKI, Respondent.**

**No. 85SC264.**

Supreme Court of Colorado, En Banc.

Sept. 8, 1987.

Rehearing Denied Oct. 5, 1987.

Grant, McHendrie, Haines and Crouse, P.C., Peter J. Crouse, Charles H. Haines, Jr., Robert D. Mendenhall, Denver, for petitioner.

DeMuth & Kemp, Lael S. DeMuth, Barbara G. Chamberlain, Denver, for respondent.

VOLLACK, Justice.

We granted certiorari to review the court of appeals' decision in *Podleski v. Mortgage Finance, Inc.*, 709 P.2d 18 (Colo.App. 1985), to consider whether exemplary damages may be awarded in a breach of contract action as a matter of law. The court of appeals held that exemplary damages may be recovered in a breach of contract action. We disagree, based upon our interpretation of the exemplary damages statute, section 13–21–102, 6 C.R.S. (1973). Accordingly, we reverse.

I.

The respondent, Dr. Wojciech K. Podleski [hereinafter Dr. Podleski], filed a complaint in the Denver District Court against the petitioner, Mortgage Finance, Inc. [hereinafter MFI], and Lyle Carpenter, the president of MFI. His complaint asserted breach of a loan commitment contract. He sought damages or, in the alternative, specific performance of the loan commitment contract. Dr. Podleski asserted that he had reasonably relied upon misrepresenta-

tions made by MFI which entitled him to punitive damages in the sum of $10,000. His complaint also contained a claim against MFI and Carpenter for outrageous conduct, which caused the respondent to suffer mental anguish, embarrassment, and humiliation for which he also sought punitive damages.

MFI is engaged in business as a mortgage broker involved in procuring loans on behalf of interested parties in return for a brokerage fee. In September of 1979, Dr. Podleski contacted MFI in order to obtain a permanent loan commitment for a medical office building that he planned to construct. Dr. Podleski had arranged for a construction loan through his bank, but was advised that he needed permanent financing for the building before the construction loan could be finalized. On October 1, 1979, MFI delivered to Dr. Podleski a proposed permanent loan commitment. The commitment was in writing and proposed permanent financing of $135,000 on the medical building at an interest rate of 10.75%, payable in full at the end of fifteen years.

Dr. Podleski made changes on the face of this written agreement regarding the deposit and brokerage fee. The trial court found that Dr. Podleski's attorney had discussed the changes with the secretary-treasurer of MFI, who approved them. On October 3, 1979, Dr. Podleski met with Lyle Carpenter at the offices of MFI, signed the loan commitment, and tendered a cashier's check payable to MFI in the amount of $1,350. Mr. Carpenter executed at least two copies of the loan commitment which contained the changes. The trial court found that the evidence was uncontroverted that the execution by Mr. Carpenter occurred after the changes were made to the agreement. Dr. Podleski used this loan commitment to obtain the construction loan

necessary for the completion of the medical building. The building was completed, and Dr. Podleski moved into the facility on March 1, 1980. The trial court found, based upon the physical evidence and the conduct of the parties, that MFI had "stalled" Dr. Podleski regarding a date for the closing of the permanent financing, without denying the existence of the loan commitment.

Meanwhile, during the period of time from October 3, 1979, until March 20, 1980, interest rates were increasing, and MFI found that it was unable to honor the loan commitment made to Dr. Podleski and still make a profit on the transaction. On March 20, 1980, MFI notified Dr. Podleski in writing of its refusal to honor the loan commitment. Dr. Podleski acquired alternative financing, but at a higher interest rate. He then brought this action.

At the beginning of trial, the outrageous conduct claim was withdrawn by Dr. Podleski. Following completion of the respondent's case-in-chief, the trial court dismissed the claim for fraud. The only claims before the court at the conclusion of the trial were the claims for breach of contract and for specific performance. The trial court dismissed the specific performance claim and entered judgment in favor of the respondent in the amount of $14,280 on the breach of contract claim, as damages arising from the increased interest on the alternative financing, together with $540 for the time the respondent spent away from his practice in order to secure financing. The trial court awarded the respondent $30,000 as exemplary damages based upon its finding "beyond a reasonable doubt that the actions of the Defendant [MFI] in this case were attended by circumstances of fraud, malice and willful and wanton disregard of the Plaintiff's rights and feelings."[1]

1. In its conclusions of law, the trial court awarded the respondent exemplary damages "under the Doctrine of *Olathe State Bank v. Westessen* [sic]." There are actually three cases involving these parties: *Westesen v. Olathe State Bank,* 71 Colo. 102, 204 P. 329 (1922) [*Westesen I*]; *Westesen v. Olathe State Bank,* 75 Colo. 340, 225 P. 837 (1924) [*Westesen II*], and *Westesen v.*

*Olathe State Bank,* 78 Colo. 217, 240 P. 689 (1925) [*Westesen III*].

In *Westesen I,* this court held that a contract existed where a party delivered notes to a bank in exchange for the bank's promise to loan him money for a vacation. This case did not involve a question of damages; that issue was dealt with in the following cases.

The court of appeals affirmed the judgment for exemplary damages, holding that although the respondent did not plead malice or willful and wanton conduct, the issue was presented by the evidence. *Podleski*, 709 P.2d at 19. The court of appeals stated that where "the facts alleged and proved establish willful and wanton conduct and reckless disregard for the rights of the plaintiff, the maleficent intent on which exemplary damage awards in tort are based is present, and exemplary damages may be awarded though the action sounds in contract." *Id.* at 19 (quoting *Davies v. Bradley*, 676 P.2d 1242, 1246 (Colo.App. 1983)).

## II.

MFI contends that as a matter of law exemplary damages may not be awarded in a breach of contract action, pursuant to section 13–21–102, 6 C.R.S. (1973). We agree.

■ Exemplary damages are only available in Colorado pursuant to statute. *Kaitz v. District Court*, 650 P.2d 553 (Colo. 1982); *Ark Valley Alfalfa Mills, Inc. v. Day*, 128 Colo. 436, 263 P.2d 815 (1953). Prior to enactment of the first exemplary damages statute in 1889, "no principle was better settled in this state than that punitive or exemplary damages could not be allowed in any civil case." *French v. Deane*, 19 Colo. 504, 507, 36 P. 609, 610 (1894). In construing a statute to ascertain the intent of the General Assembly, words and phrases should be given effect according to their plain and obvious meaning. *Engelbrecht v. Hartford Accident & Indem. Co.*, 680 P.2d 231 (Colo.1984); *see* § 2–4–101, 1B C.R.S. (1980). Section 13–21–102 provides:

> In all civil actions in which damages are assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice or insult, or a wanton or reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

6 C.R.S. (1973).

■ The language of the statute, "for a wrong done to the person, or to personal or real property," contemplates tortious conduct. *Kohl v. Graham*, 202 F.Supp. 895 (D.Colo.1962) (these words "were unquestionably intended to apply to any type of tort." *Id.* at 896). Traditionally, legal remedies for breach of contract do not provide for compulsion of the promisor to perform, or punishment for failure to perform, but compensation of the promisee for the loss resulting from breach. *See Restatement (Second) Contracts* § 355 (1981).[2] The traditional goal of compensation to the non-breaching party is at odds with the statutory purpose of section 13–21–102.

■ The general purposes of section 13–21–102 are punishment of the defendant and "deterrence against the commission of

---

*Westesen II* involved the same parties, and this court held that in an action for breach of contract exemplary damages were not recoverable because "the case involves no such wrong as the statute and the general rule contemplate." 75 Colo. at 342, 225 P. at 838 (citations omitted).

In *Westesen III* this court allowed recovery of damages for mental suffering and humiliation where the breach was the proximate cause of the mental suffering. *Westesen III* is cited in the commentary for CJI–Civ.2d 30:48, entitled "Special Damages—Mental Suffering," which states:

> If you also find the defendant's breach of the contract was willful and wanton, then you shall award damages in favor of the plaintiff in an amount which will *reasonably compensate* him for mental suffering, if any.

(Emphasis added.) The trial court's order clearly echoes this language. A review of the record shows that the trial court specifically referred to CJI–Civ.2d 30:48 in considering exemplary damages. However, compensation for mental suffering is distinct from exemplary damages. The court of appeals did not refer to either *Westesen* case, but relied on section 13–21–102.

The trial court's finding of fraud, malice and willful and wanton disregard for the plaintiff's feelings "beyond a reasonable doubt" refers to section 13–25–127(2), 6 C.R.S. (1973), which requires that a claim for exemplary damages be proved beyond a reasonable doubt.

2. Section 355 states:

> Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.

similar offenses by the defendant or others in the future." *Mince v. Butters,* 200 Colo. 501, 503, 616 P.2d 127, 129 (1980). *See also, e.g., Frick v. Abell,* 198 Colo. 508, 602 P.2d 852 (1979). The award of exemplary damages is not a separate and distinct cause of action, but is permitted only in conjunction with an underlying and independent "civil action" in which actual damages are assessed for a legal wrong done to the injured party. *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 213 (Colo.1984). *See also Harding Glass Co., Inc. v. Jones,* 640 P.2d 1123 (Colo.1982).

■ In the past, we have interpreted this statute to prohibit the award of punitive damages in breach of contract actions. *Williams v. Speedster, Inc.,* 175 Colo. 73, 485 P.2d 728 (1971); *Sams v. Curfman,* 111 Colo. 124, 137 P.2d 1017 (1943). *See also Postal Instant Press v. Jackson,* 658 F.Supp. 739 (D.Colo.1987) (applying Colorado law, the court held that punitive damages are not recoverable under a claim for breach of contract and specifically rejected the court of appeals' reasoning in *Podleski v. Mortgage Finance, Inc.*); *Davis Cattle Co. v. Great Western Sugar Co.,* 393 F.Supp. 1165 (D.Colo.1975) (applying Colorado law), *aff'd,* 544 F.2d 436 (10th Cir. 1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). "Exemplary damages are allowed, *not as compensation* to the injured party for the wrong done, but as a punishment of the wrongdoer as an example to others." *Ark Valley,* 128 Colo. at 440, 263 P.2d at 817 (emphasis added); *French v. Deane,* 19 Colo. at 511, 36 P. at 612. Parties to a contract voluntarily enter into a bargained-for agreement. Contract law does not usually contemplate the punishment of the breaching party but compensation for loss of the party's bargained-for position. *Accord Morrow v. L.A. Goldschmidt Assoc., Inc.,* 112 Ill.2d 87, 96 Ill.Dec. 939, 492 N.E.2d 181 (1986) (Illinois adheres to the view that tort and contract law are founded on different policies which justify separate rules with respect to recovery of punitive damages). *But see Hood v. Fulkerson,* 102 N.M. 677, 699 P.2d 608 (1985) (New Mexico does not distinguish between tort and contract in application of punitive damages).

The respondent contends that we should adopt an exception to the general rule that exemplary damages may not be awarded for breach of contract. The respondent points to our adoption of the tort of bad faith breach of an insurance contract in *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984), as support for his position that punitive damages should be awarded in breach of contract actions. We disagree.

In *Farmers Group,* we held that it was necessary to impose a *legal duty* upon the insurer to deal with its insured in good faith, based upon the "quasi-fiduciary relationship" between the insurer and the insured. *Id.* at 1141. *Accord Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983); *Noble v. National Am. Life Ins. Co.,* 128 Ariz. 188, 624 P.2d 866 (1981). The facts of the case at bar do not present circumstances imposing special legal duties upon the parties which would require us to address any exception to section 13–21–102. Here, we have a commercial transaction between parties of equal bargaining power. Furthermore, no tort claim was before the court at the conclusion of the trial.

The general rule precluding exemplary damages in breach of contract actions is followed by the majority of jurisdictions that have addressed this question. *E.g., Palmer v. Ted Stevens Honda, Inc.,* 193 Cal.App.3d 530, 238 Cal.Rptr. 363 (1987) ("The punitive damages theory cannot be predicated on the breach of contract cause of action without an underlying tort." *Id.,* 238 Cal.Rptr. at 366); *Morrow v. L.A. Goldschmidt Assoc., Inc.,* 112 Ill.2d 87, 96 Ill.Dec. 939, 492 N.E.2d 181 (1986); *Ellmex Const. Co., Inc. v. Republic Ins. Co.,* 202 N.J.Super. 195, 494 A.2d 339 (A.D.1985) (general rule is that punitive damages are not available in contract cases); *Z.D. Howard Co. v. Cartwright,* 537 P.2d 345 (Okla.1975) (where breach amounts to an independent, willful tort, punitive damages may be recovered); *cf., Supreme Automotive Mfg. Corp. v. Continental Casualty Co.,* 126 A.D.2d 153, 512 N.Y.S.2d 820 (1987) (general rule in contract actions is

that, in order to support award of punitive damages, there must be fraudulent or criminal acts upon the general public, not merely a private wrong).

The court of appeals has departed from the rule of law set forth in *Williams* and *Sams.* In *Davies v. Bradley,* 676 P.2d 1242 (Colo.App.1983), the purchasers of a house sued the builder-vendor for structural defects in the house which breached the implied warranty of habitability. The trial court found in favor of the purchasers and awarded exemplary damages against the builder-vendor. The court of appeals affirmed:

> Exemplary damages are not ordinarily a proper remedy in breach of contract cases. This is because the allegations in an action for breach of contract do not ordinarily bring the case within the confines of the statute. Where, however, as here, the facts alleged and proved establish willful and wanton conduct and reckless disregard for the rights of the plaintiff, the maleficent intent on which exemplary damage awards in tort are based is present, and exemplary damages may be awarded though the action sounds in contract. The punitive and deterrent purposes of the statute authorizing exemplary damages in civil cases are thereby effected.

*Id.* at 1246 (citations omitted).

The holding in *Davies v. Bradley* has been followed by the court of appeals in a line of cases allowing exemplary damages in breach of contract actions: *Collister v. Ashland Oil Co.,* 687 P.2d 525 (Colo.App. 1984); *Denver Publishing Co. v. Kirk,* 729 P.2d 1004 (Colo.App.1986).[3] In *Kirk,* the defendant was an independent newspaper distributor who contracted with the plaintiff to distribute newspapers. After the termination of their relationship, the plaintiff alleged that the defendant owed monies on account and brought suit. The defend-

ant counterclaimed for willful and wanton breach of a contract and for outrageous conduct by the plaintiff. The trial court directed a verdict against the defendant for the outrageous conduct claim. At issue before the court of appeals was the defendant's claim for emotional distress as a consequence of the breach of the contract. The court of appeals held that

> mental anguish which results solely from pecuniary loss following breach of contract is not recoverable because pecuniary loss as a result of breach of contract invariably causes some form and degree of mental distress. However, damages for mental anguish alone are recoverable for willful or wanton breach when they are a natural and proximate consequence of the breach.

*Id.* at 1008 (citing *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo. 1985)). The court of appeals labeled the damages "exemplary damages" and cited *Podleski v. Mortgage Finance, Inc.,* 709 P.2d 18 (Colo.App.1985).

*Kirk* illustrates the court of appeals' confusion of compensatory damages for mental anguish with punitive damages.[4] Damages for mental suffering are recoverable for a breach of a contract when they are the natural and proximate consequence of the breach, *Trimble,* 697 P.2d at 731; *McCreery v. Miller's Groceteria Co.,* 99 Colo. 499, 64 P.2d 803 (1937), and are compensatory in nature. Exemplary damages are not compensatory, but punitive in character. *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187 (Colo.1984).

Exemplary damages are only available under section 13–21–102, and are not to be confused with compensatory damages available for mental suffering. Here, a claim for mental suffering was not properly before the trial court or the court of appeals. The only claim before the trial court at the conclusion of the trial was a claim for breach of contract. The compen-

---

**3.** None of these cases mentions a prior court of appeals' decision, *Poertner v. Razor,* 500 P.2d 989 (Colo.App.1972) (not selected for official publication), which held that exemplary damages may not be awarded incidental to an action

in contract (citing *Sams v. Curfman,* 111 Colo. 124, 137 P.2d 1017 (1943)).

**4.** The trial court also merged the two forms of damages. *See supra* note 1.

satory award for said breach was the proper remedy. The judgment as to exemplary damages was improper and is accordingly reversed.[5]

MULLARKEY, J., does not participate.

**5.** We note that the court of appeals has also recently interpreted the punitive damages statute contrary to the position set forth by this court with regard to equity actions. In *Cox v. Bertsch,* 730 P.2d 889 (Colo.App.1986), the court of appeals stated that "in recognition of the merger of law and equity, the modern trend is to allow exemplary damages in addition to equitable relief where injury is caused by a tort." 730 P.2d at 892–93. The court of appeals went on to hold that "the equitable nature of the relief awarded is not determinative of the question of the availability of exemplary damages." *Id.* at 893.

However, in *Kaitz v. District Court,* we stated, "In interpreting this statute [section 13–21–102], we have held that punitive damages are not recoverable in actions in equity. Thus our conclusion ... that petitioners' action was equitable in nature is dispositive of this issue. The trial court properly ... dismiss[ed] the claim for exemplary damages." 650 P.2d 553, 556 (Colo. 1982) (citations omitted). *Accord Miller v. Kaiser,* 164 Colo. 206, 433 P.2d 772 (1967). *Cox* is also contrary to *Poertner v. Razor,* 500 P.2d 989, in which the court of appeals stated, "It is well established in this state that an award of punitive damages incidental to equitable relief is improper." *Id.* at 994.