**GOLD RUSH INVESTMENTS, INC.,**
**Plaintiff–Appellee and**
**Cross–Appellant,**

v.

**G.E. JOHNSON CONSTRUCTION COMPANY, INC., and Reliance Insurance Company, Defendants–Appellants and Cross–Appellees.**

**UNICON CONSTRUCTION, INC., Defendant and Third–Party Plaintiff–Appellant and Cross–Appellee,**

v.

**SISTERS III PLUMBING AND HEATING, INC., and American Home Assurance Company, Third–Party Defendants–Appellees.**

No. 87CA1801.

Colorado Court of Appeals,
Div. III.

Aug. 2, 1990.

As Modified on Denial of Rehearing
Sept. 20, 1990.

Certiorari Granted March 25, 1991.

Vinton, Slivka & Panasci, Richard P. Slivka, David L. Dain, Jane A. Tidball, Denver, for plaintiff-appellee and cross-appellant Gold Rush Investments, Inc.

Sparks, Dix, Enoch & Winslow, P.C., R. Kenneth Sparks, Robert M. Willson, Colorado Springs, Cooper & Kelley, P.C., Thomas B. Kelley, Denver, for defendants-appellants and cross-appellees G.E. Johnson Const. Co., Inc. and Reliance Ins. Co., and defendant and third-party plaintiff-appellant and cross-appellee Unicon Const., Inc.

Moye, Giles, O'Keefe, Vermeire & Gorrell, Teryl R. Gorrell, Jerry N. Jones, Denver, for third-party defendants-appellees Sisters III Plumbing and Heating, Inc.

Opinion by Judge CRISWELL.

In this breach of contract action, defendant, Unicon Construction, Inc., appeals from the judgment entered on a jury verdict awarding damages in favor of plaintiff, Gold Rush Investments. Unicon also appeals from the judgment entered against it on its claim for indemnity asserted against third-party defendant, Sisters III Plumbing and Heating, Inc. Joining Unicon in this appeal are G.E. Johnson Construction Co., Inc., and Reliance Insurance Co. against whom judgment was entered post-trial based on their liability which was derivative to Unicon's. Gold Rush cross-appeals, arguing that the punitive damage award entered in its favor was erroneously vacated by the trial court in a post-trial ruling. We affirm in part and reverse in part.

Gold Rush hired Unicon to construct a discotheque and hotel. As the project neared completion, various disputes arose, and the parties agreed to submit certain of the disputed issues to binding arbitration. In its decision, the arbitrator, an architecture firm selected by the parties, deter-

mined, among other findings, that Unicon had constructed the hotel tower without the exterior control joints required under the contract and, in addition, had failed to include the steel reinforcement and grouting called for under the plans and specifications for the exterior walls. In addition to ordering that repairs for the latter omission be undertaken, the arbitrator also ordered Unicon to repair several deficiencies in the hotel's mechanical system.

Gold Rush commenced this action in which it initially asserted both a contract claim and a tort claim based on negligence. It sought to collect consequential damages claimed to have resulted from the deficiencies determined to exist by the arbitrator and from the subsequent repair process. Specifically, Gold Rush sought to recover the diminution in the hotel's market value, and having leased the hotel, Gold Rush also sought to recover as damages an amount of rent it claimed it was forced to forgive because of an alleged reduction in its tenant's income caused by the construction problems. In addition, claiming that Unicon's conduct was willful, wanton, and attended by circumstances of malice, it sought an assessment of punitive damages.

Unicon joined Sisters, its mechanical subcontractor, as a third-party defendant seeking indemnification for any damages that might be awarded as a result of any defect in the hotel's mechanical systems.

At trial, the parties submitted a statement of undisputed facts based on the previous arbitration award. Relying on the arbitration award, the trial court ruled, as a matter of law, that Unicon had breached its contract with Gold Rush. The jury then found for Gold Rush on the damage issues and awarded it $274,500 for lost lease payments, $591,600 for the reduced value of the hotel, and $247,500 in exemplary damages. This latter award was vacated by the trial court in a post-trial order. The jury also returned a verdict in favor of Sisters on Unicon's claim for indemnification under the subcontract between the two.

## I.

■ Unicon first challenges the jury's award of damages for the forgiven lease payments. It argues that the award was improper as a matter of law because the trial court failed to rule on the validity of Gold Rush's agreement to forgive lease payments before submitting the issue of damages arising from that agreement to the jury. It also asserts that there was no basis for the award because the evidence presented at trial conclusively showed that the lease agreement underlying the later agreement to forgive payments was a sham transaction. We disagree with both contentions.

Gold Rush, which was solely owned by Dennis R. Muck, leased the hotel and its improvements to Graystone Castle, Ltd., a corporation that was wholly owned by his brother, Ronald P. Muck. The lease required monthly payments of $55,000 which represented the hotel's share of the mortgage payment for the entire development, based on its square footage. Gold Rush maintains that it agreed to forgive a portion of both past and future rent payments under its lease with Graystone because it recognized that the construction defects would continue adversely to affect Graystone's income from the hotel.

Unicon claims that both the lease agreement and the agreement to forgive rent payments were nothing more than self-dealing arrangements intended to create an element of damage. In support of its assertion, Unicon cites the familial relationship between the Mucks and other evidence that indicated that Dennis Muck was actively involved in the operation of the hotel. Unicon further argues that, because these agreements were not arms-length transactions, the trial court should have closely scrutinized them to determine if they were voidable as the result of fraud or unfairness.

In arguing that these agreements should have been subjected to close judicial scrutiny, Unicon relies on *Colorado Management Corp. v. American Founders Life Insurance Co.*, 145 Colo. 413, 359 P.2d 665 (1961) and *Film Enterprises, Inc. v. Select-*

ed Pictures, Inc., 138 Colo. 468, 335 P.2d 260 (1959). These cases each involved the enforceability of a contract between two corporations having common officers, directors, or investors, which was challenged by one of the contracting parties. Because the lease and forgiveness agreements are here being challenged by Unicon, a third party, we consider these cases inapposite and conclude that the trial court committed no error in allowing the jury, as the trier of fact, to determine whether the agreement for the reduction in lease payments was a valid agreement or a mere sham. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo.1986) (whether the parties have entered into a contract is a jury question).

We reach this conclusion because the evidence presented fully explored the relationship between Gold Rush and Graystone. In addition, the jury was instructed that it had to find both the agreement and the amount forgiven reasonable before it could award any damages based upon any forgiveness of lease payments. That the jury heeded this instruction is reflected in its verdict which awarded a considerably lesser amount than would have been warranted by the agreement. Consequently, we are satisfied that the jury's award is supported by the record. *See Cooley v. Big Horn Harvestore Systems, Inc.*, 767 P.2d 740 (Colo.App.1988).

## II.

■ Unicon next contends that the expert testimony presented by Gold Rush should have been stricken because it was speculative and based on the opinions of others. Again, we disagree.

The evidence complained of by Unicon consists, in part, of an accounting expert's testimony regarding the amount of lost income suffered by Graystone. In formulating her opinion, the expert relied on, among other factors, a second expert's opinion that the management and marketing of the hotel did not contribute to the hotel's lost income.

Unicon also attacks the second expert's testimony which concerned that witness'

estimate of the hotel's reduced market value. Unicon contends that this expert improperly developed his opinion in reliance on the accounting expert's conclusions as to lost income and a third expert's testimony as to the hotel building's physical life.

CRE 703, which is substantively identical to the corresponding federal rule, provides that,

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

■ CRE 703 incorporates three methods by which an expert may acquire knowledge of the facts upon which his opinion will be predicated. Under the first method, the expert may gather information through firsthand observation. The second method allows the expert to base his testimony upon facts presented at trial, either in the form of hypothetical questions propounded by counsel or by way of the evidence presented to the trier of fact. The third method permits an expert to rely on facts outside the record which are not personally observed, but which are of the type reasonably relied upon by experts in the same field. 11 *Moore's Federal Practice* § 703.02 (2d ed.1989).

■ The trial court has broad discretion in determining whether the requirements governing expert opinions have been satisfied and whether the expert's testimony is admissible. *See Connell v. Sun Exploration & Production Co.*, 655 P.2d 426 (Colo. App.1982).

Prior to this state's adoption of the rules of evidence, expert opinions based on the opinions of others were not admissible. *See People v. Beasley*, 43 Colo.App. 488, 608 P.2d 835 (1980). The rationale for this conclusion was premised on the concerns inherent in "admitting the opinions of absent 'experts' whose qualifications have not been established to the satisfaction of the

court, whose demeanor cannot be observed by the trier of fact, and whose pronouncements are immune from cross-examination." *McMunn v. Tatum,* 237 Va. 558, 379 S.E.2d 908 (1989).

However, several federal courts have viewed the broader scope of Fed.R.Evid. 703 as an implicit recognition of the practical reality that an expert cannot be an expert in all fields and can reasonably be expected to rely on the opinions of experts in other fields as background information for arriving at his own opinion. *United States v. 1,014.16 Acres of Land,* 558 F.Supp. 1238 (W.D.Mo.1983), *aff'd,* 739 F.2d 1371 (8th Cir.1984). *See also Ramsey v. Culpepper,* 738 F.2d 1092 (10th Cir. 1984); *American Universal Insurance Co. v. Falzone,* 644 F.2d 65 (1st Cir.1981); *Bauman v. Centex Corp.,* 611 F.2d 1115 (5th Cir.1980). *But see American Key Corp. v. Cole National Corp.,* 762 F.2d 1569 (11th Cir.1985) (restates traditional prohibition).

Here, the opinions of the experts relied upon by other witnesses related to fields other than those in which the witnesses claimed any expertise themselves. All experts testified to their opinions at trial, and they all were subjected to cross-examination. Furthermore, Unicon does not contest the assertion that the opinions relied upon were of the type reasonably relied upon by experts in the particular field. Nor does it challenge the proposition that all of the experts were qualified to give an opinion in their respective fields. Under these circumstances, we conclude that the experts' reliance on other expert opinions not involving areas of their own expertise did not render their testimony speculative or otherwise inadmissible.

We are not compelled to reach a contrary result by the decision in *People v. District Court,* 647 P.2d 1206 (Colo.1982). There, ·the court's general statement of the traditional rule was not essential to the result, and the issue whether CRE 703 had modified the traditional rule was apparently not raised and was not passed upon. Consequently, the statement made in that opinion was dictum and is not dispositive of the

issue now being considered. *See Coon v. Berger,* 41 Colo.App. 358, 588 P.2d 386 (1978), *aff'd,* 199 Colo. 133, 606 P.2d 68 (1980).

## III.

■ Unicon further asserts that Gold Rush did not satisfy the burden of proof necessary to recover damages based upon a reduction in the market value of the building. We disagree.

■ Damages for defective construction are to be measured by the cost to place the defective structure in its intended condition, unless to do so would cause unreasonable economic waste. *Sanford v. Kobey Brothers Construction Corp.,* 689 P.2d 724 (Colo.App.1984). On the other hand, if physical reconstruction and completion in accordance with the contract will involve unreasonable economic waste by destruction of usable property or otherwise, the damages awarded for the contractor's breach of contract should be measured by the reduction in the structure's market value. *Campbell v. Koin,* 154 Colo. 425, 391 P.2d 365 (1964).

Here, Gold Rush presented testimony from a structural engineer that replacing the missing reinforcement would cause as many problems as it might solve. Another engineering expert testified that, even if cracks in the structure were repaired and maintained properly, the building would still remain more susceptible to further problems than if it had properly been built in accordance with the original plans and specifications and that, in any event, the useful life of the building had been reduced below the expectations of the original design. This expert further testified that it would cost approximately $90,000 to repair the existing condition and an additional $9,000 per year to repair future cracking.

In our view, the evidence was sufficient to support an inference by the jury that repairing the building would be unreasonably expensive and impractical. We further conclude that the expert testimony introduced by Gold Rush to establish the hotel's reduced market value was sufficient

to support the jury's award of damages on this basis. Consequently, we will not disturb the jury's determination of these issues. *See Cooley v. Big Horn Harvestore Systems, Inc., supra.*

## IV.

■ We also disagree with Unicon's contention that damages were awarded for the forgiven future lease payments, as well as for the diminution in market value, and that these awards constituted a double recovery that was excessive as a matter of law.

Unicon's argument is premised on the fact that Gold Rush sought to recover the amount of both past and future lease payments that it had forgiven and that its evaluation expert, in reaching his opinion as to market value of the hotel in its defective condition, also considered the lesser future lease payments as an indication of its reduced value. It argues that the award of damages for both reduced future lease payments and the diminution in value in the hotel itself was improper. In support of this contention, it cites *American Anodco, Inc. v. Reynolds Metals Co.,* 743 F.2d 417 (6th Cir.1984), for the proposition that, if a loss of value is based on a loss of future profits, recovery of both the lost future profits and the reduction in value of the asset resulting therefrom would constitute a double recovery.

However, after reviewing the instructions submitted to the jury and the jury's special findings and verdicts, we conclude that, contrary to Unicon's assertion, no such double recovery actually occurred here.

While the jury was instructed as to the circumstances under which damages for lost future profits might be awarded, the instruction on consequential damages also directed that it could award as damages only such an amount as represented the "loss of lease payments that Gold Rush could reasonably have earned, but *did not earn* because of Unicon's breach." (emphasis supplied) In rendering its special verdict, the jury found both that Graystone had incurred damages in the form of lost revenues resulting from the construction deficiencies and that Gold Rush had incurred damages "in the form of forgiveness of lease payments *owed* to it by Graystone Castle, Ltd., which lease payments *would have been made* but for the loss of revenues *suffered* by Graystone Castle, Ltd., attributable to construction deficiencies." (emphasis supplied) The jury awarded Gold Rush only $274,500 in actual damages for the lost lease payments, although the evidence would have supported an award for more than $800,000 in *past* lost payments alone, plus some $800,000 in future lost payments.

In view of the instruction and special verdict form which directed the jury to award damages only for those losses already suffered and the size of the award, we are satisfied that the damages awarded related only to the past lease payments forgiven by Gold Rush.

We also note that the award to Gold Rush for the diminution in market value of the hotel was less than the $1,400,000 which the expert's opinion would have supported. Given these circumstances, therefore, we are convinced that the amount awarded by the jury for both the loss of lease payments and the reduction in market value did not, in fact, represent a double recovery by Gold Rush. *See Tyler v. District Court,* 200 Colo. 254, 613 P.2d 899 (1980) (a verdict must be given effect if it is possible to discern the jury's intent from the record).

## V.

■ Unicon next seeks reversal of the judgment entered for Sisters arguing that the jury's special verdict contained inconsistent findings. We perceive no inconsistency.

Jury verdicts will not be reversed for inconsistency if the record discloses any evidentiary basis to support them. *Alzado v. Blinder, Robinson & Co., Inc.,* 752 P.2d 544 (Colo.1988).

Here, the jury found both that Gold Rush had suffered part of the lost lease payments as a result of deficiencies in the design or installation of the mechanical sys-

tems and that Sisters had not breached its contract with Unicon. Contrary to Unicon's assertion, these findings are not inconsistent when viewed against the indemnification clause of the subcontract. Under that clause, Sisters was required to hold Unicon harmless only for any claims resulting from any act or omission committed by Sisters under the subcontract. Furthermore, pursuant to the statement of undisputed facts submitted to the jury, Sisters was not bound by the conclusions of the arbitrator. Thus, inasmuch as there is evidence in the record to support the jury's findings that Sisters' performance conformed with the terms and conditions of the subcontract and that the cause of the deficiencies in the mechanical systems resulted from acts or omissions by a party other than Sisters, we must uphold the verdict. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981).

In light of the foregoing conclusion, we need not address the statute of limitations issue raised by Sisters.

## VI.

■ In its final assertion of error, Unicon asserts that it did not receive a fair trial because of the conduct and rulings of the trial judge. However, our review of the record has failed to reveal any conduct on the part of the trial court which so departed from the required level of impartiality that Unicon was denied a fair trial. *See People v. Drake,* 748 P.2d 1237 (Colo. 1988).

## VII.

■ On cross-appeal, Gold Rush argues that the trial court erred in vacating the jury's award of punitive damages. We agree.

■ While the stipulation itself is not a part of this record, in documents filed with the trial court, in its brief filed with this court, and in its oral argument here, Unicon candidly admitted that, prior to the trial of this cause, both parties agreed to simplify the issues to be presented to the jury by dismissing plaintiff's negligence claim and by allowing the jury to consider the question of punitive damages under its breach of contract claim. Both parties agree that they entered into this stipulation in light of the then existing case law, *e.g., Denver Publishing Co. v. Kirk,* 729 P.2d 1004 (Colo.App.1986), which provided that punitive damages were recoverable in breach of contract actions. However, after the verdict awarding punitive damages to Gold Rush was returned, our supreme court issued its opinion in *Mortgage Finance, Inc. v. Podleski,* 742 P.2d 900 (Colo. 1987), which held that punitive damages cannot be recovered for a breach of contract.

Based on the holding in *Podleski,* the trial court vacated that portion of the verdict awarding punitive damages. In doing so, it concluded that there was no "evidence" of the parties' stipulation in the record. This conclusion, however, overlooked Unicon's clear admission, in its posttrial memorandum, that the stipulation did exist.

■ Nevertheless, Unicon argues that the trial court acted properly in vacating the exemplary damage award because stipulations by the parties cannot bind a court in the determination of questions of law. Although we agree with that general rule, *see Bar 70 Enterprises, Inc. v. Tosco, Corp.,* 703 P.2d 1297 (Colo.1985), it is also true that parties may stipulate away valuable rights, provided the court is not required to abrogate inviolate rules of public policy. *See Kempter v. Hurd,* 713 P.2d 1274 (Colo.1986).

Here, the stipulation resembled a contractual agreement for the dismissal of what might have been viable negligence claims in exchange for an agreement that punitive damages, if awarded by the jury, could be assessed under the breach of contract claim. Nothing in this stipulation would have affected either the rights of third parties or any public policy; the only rights affected were those of the contracting parties. Thus, to allow Unicon now to take advantage of a subsequent clarification in the law would unfairly permit it to obtain the benefit it received from the stipulation while depriving Gold Rush of the consideration it bargained for. We conclude, therefore, that the court erred in refusing to enter a judgment for punitive damages in the amount set by the jury.

We do not read the decision in *Bar 70 Enterprises* as requiring a contrary result. In that case, the supreme court specifically determined that the stipulation at issue did not constitute any admission by one party of the other party's compliance with a requirement imposed by it. Further, the stipulation there, unlike the one at bar, does not appear to have been contractual in nature. Thus, the broad, general statement in *Bar 70 Enterprises* as to the extent to which a court may be bound by a stipulation, went beyond the issues presented by the facts in that case and does not control our analysis here. *See Coon v. Berger, supra.*

The judgment is affirmed, except that portion thereof that vacated the jury award of punitive damages. That part of the judgment is reversed, and the cause is remanded to the trial court with directions to enter judgment for such damages as determined by the jury's verdict.

STERNBERG, C.J., and MARQUEZ, J., concur.